74ijoset

1  UNITED STATES DISTRICT COURT
  SOUTHERN DISTRICT OF NEW YORK

2  -----------------------------------x

3  UNITED STATES OF AMERICA

4

          v.                    S2 04 Cr. 1002(CLB)

5

6                               TRIAL

  RICHARD JOSEPHBERG,

7

           Defendant.

8  -----------------------------------x

9                      White Plains, N.Y.

10                     April 18, 2007
                       9:15 a.m.

11

12

13  Before:

14          THE HONORABLE CHARLES L. BRIEANT,

                     District Judge

15

16                 APPEARANCES

17

18  MICHAEL J. GARCIA
      United States Attorney for the

19      Southern District of New York
  STANLEY J. OKULA, JR.

20      Assistant United States Attorney
  -- and --

21      Department of Justice Tax Division
  ANDREW J. KAMEROS

22      Trial Attorney

23

24  JARED J. SCHARF
  ADAM SCHARF

25      Attorneys for Defendant

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

74ijoset

1                           APPEARANCES (Continued)

2

3       RICONDA & GARNETT
             Attorneys for Defendant
        MICHAEL T. SULLIVAN

4

5       Also Present:

6       TIMOTHY RYAN, Internal Revenue Service
        JOHN DENNEHY, Internal Revenue Service

7       SUSAN GIORDANO, Paralegal, United State's Attorney's Office
        WILLIAM DAVIDSON, Investigator for Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

74ijoset

1    of the indexes and that each has seen the other's.

2              (In open court; jury present)

3              THE DEPUTY CLERK:  The Court is about to charge the

4    jury.  Anyone wishing to leave, please do so quietly.

5              THE COURT:  Members of the jury, I appreciate the

6    patience and thoughtfulness with which you performed and

7    attended to your duties at this trial, and now you're going to

8    be performing your final function as jurors, acting as

9    ministers of justice, one of the most significant obligations

10   of American citizenship.

11             You should each discharge your final duty in an

12   atmosphere of complete fairness and impartiality and, as I

13   mentioned when you were first selected, without bias or

14   prejudice for or against the government or the defendant, who

15   are parties to this controversy.

16             As I've told you in the beginning of the trial, under

17   our court system, the function of the judge and of the jury are

18   separate.

19             You are to decide and pass upon the disputed fact

20   issues in the case.  You are the sole and exclusive judges of

21   the facts.  That's so important that you may hear me repeat it

22   more than once.  You should determine the facts from what you

23   believe to be the believable or credible evidence.  You should

24   also decide the weight and significance of the evidence, both

25   the testimony and the exhibits.  You evaluate and decide the

74ijoset          C H A R G E

1    credibility and truthfulness of the witnesses, and you draw the

2    conclusions which are reasonable inferences from the evidence,

3    and you resolve in your deliberations any conflicts there may

4    be in the evidence.

5           My task now is to instruct you as to the applicable

6    law and explain it to you.  And it's your duty under your oath

7    as jurors to accept the Court's instructions as to the law and

8    apply them to the facts as you find them to be, and, on that

9    basis, you will decide the case.

10          The fact that the government is a party to the case

11   entitles it to no greater consideration than that given to any

12   other party in a court of law.  Both sides of any case,

13   individuals and the government alike, stand as equals before

14   the court and jury.

15          Neither the indictment nor the fact that an indictment

16   has been issued is any evidence whatsoever of the crimes

17   charged.  Instead, an indictment is merely the method or

18   procedure under the law whereby the person that is accused of a

19   crime is brought into a court to have his case determined by

20   trial jurors such as yourselves.  An indictment is not

21   considered except for its purpose of defining the charges

22   against the defendant, and, therefore, not the fact that an

23   indictment has been issued nor the indictment itself must be

24   given any evidentiary weight whatsoever.  It's merely a

25   document containing accusations.

1          The defendant is on trial only for the acts or conduct
2     alleged in the indictment.  The defendant is not on trial for
3     any charge not mentioned in the indictment.
4          The defendant has pleaded not guilty to each of the 17
5     counts of the indictment, and the government has the burden of
6     proving each element of each count beyond a reasonable doubt.
7     And if the government has failed to prove any single element of
8     a count in the indictment which you are then considering beyond
9     a reasonable doubt, you must return a verdict for not guilty on
10    that count and go on and consider the next count.  If, on the
11    other hand, you find that the government's proved every element
12    of the count you are then considering beyond a reasonable
13    doubt, you should convict on that count.
14          I'll define and explain the elements of the different
15    counts as we proceed.  You can treat them as if they were
16    separate cases being tried together.  If you find guilt on one
17    count, that doesn't necessarily mean that the defendant is
18    guilty on any other count.  Each one is like a separate trial.
19          The defendant is never required to prove his
20    innocence.  And as I told you before, the defendant is presumed
21    innocent of the accusations contained in the indictment.  The
22    presumption of innocence is one of the strongest presumptions
23    known to the law, and it's in the defendant's favor at the
24    start of the trial, it continues in his favor throughout the
25    entire trial, it's in the defendant's favor now, and it remains

74ijoset          C H A R G E

1    in his favor during the course of your deliberations in the

2    jury room.  And the presumption of innocence is removed only if

3    and when you, the jury, are unanimously satisfied that the

4    government has sustained its burden of proving the guilt of the

5    defendant beyond a reasonable doubt on the count you are then

6    considering.  The presumption applies to each count in the

7    indictment.

8            Now, the question naturally arises, what's a

9    reasonable doubt?  Well, members of the jury, those words

10   almost define themselves.  A reasonable doubt is a doubt based

11   upon reason, upon common sense.  It's the kind of doubt that

12   would make a reasonable person such as yourself hesitate in

13   connection with an important matter in your own life.

14           It's not required that the government prove guilt

15   beyond all possible doubt.  The test is one of reasonable

16   doubt.  And a reasonable doubt is not based on mere

17   speculation.

18           The burden of proof beyond a reasonable doubt is

19   placed at all times on the government and never shifts to a

20   defendant.  The law never imposes upon a defendant in a

21   criminal case the burden or duty of offering any evidence or

22   proving his innocence.

23           If, after a fair and impartial consideration of all

24   the evidence, you have a reasonable doubt as to the defendant's

25   guilt on the count you're then considering, it's your duty to

1    find a verdict of not guilty as to that count.  On the other

2    hand, if, after a fair and impartial consideration of all the

3    evidence, you are satisfied of the defendant's guilt beyond a

4    reasonable doubt, you should vote a verdict of guilty on that

5    count.

6           The evidence in the case consists of sworn testimony

7    of all the witnesses and all the exhibits admitted into

8    evidence, including stipulations of fact.  If I make any

9    reference to any factual matter or testimony which doesn't

10   agree with your recollection, that controls.  Anything said

11   about the evidence or the facts by the Court or by the lawyers

12   in their closing arguments or during the trial doesn't take the

13   place of your own recollection or understanding of what the

14   evidence is.

15          As I told you earlier, opening and closing statements

16   by the attorneys are not evidence.  They're only an indication

17   of what the attorneys expected to believe that -- expected to

18   show you and believe they have shown you in the course of the

19   trial, and it's only permitted to help you in understanding the

20   evidence.

21          Questions are not evidence.  Questions are never

22   evidence.  The evidence is in the answers.  The questions are

23   useful only to the extent that they help you to understand the

24   meaning and significance of the answers.

25          Please understand that this trial is not a fight

74ijoset          C H A R G E

1   between the attorneys and it's not a dispute between any

2   attorney and the Court.  It's a search for truth and justice.

3         Please do not infer from anything said by me that I

4   have any opinion as to the case.  I do not.  That's not my job.

5   It's your job.  I leave it entirely with you.

6         The documents and exhibits received in evidence are

7   evidence.  Anything as to which an objection was sustained by

8   the Court or ordered to be stricken out must be disregarded by

9   you in its entirety, and you must follow the Court's rulings on

10  those matters.

11        In your work as jurors, you're asked to draw

12  inferences from pieces of evidence before you and from

13  testimony and exhibits.  Inference is simply a word which

14  describes a process of reasoning whereby you start with a fact

15  or facts known to you or already proved and you conclude from

16  that another fact which, in logic, flows from the facts known

17  to you.

18        A decision of whether or not to accept or reject a

19  disputed inference lies entirely in your sound judgment as

20  jurors.

21        Evidence which requires an inference to be drawn by

22  the jury is what's commonly called circumstantial evidence.

23  There is no distinction in this court between direct evidence

24  and circumstantial evidence.  The totality of all the evidence

25  must indicate that the defendant is guilty beyond a reasonable

1   doubt on the count you're then considering, and if you do not

2   so find, you must return a verdict of not guilty on that count.

3          Some of the exhibits in this case are charts and

4   summaries.  And as I mentioned at the time these were received

5   in evidence, a chart or a summary is merely an analysis or

6   summary of documents previously admitted or certain testimony

7   previously heard and, in some instances, to set forth in detail

8   conclusions and calculations that a witness summarized orally.

9          These charts and summaries are offered to assist you

10  as visual or organizational aids.  They are not themselves,

11  however, evidence.  They're merely graphic demonstrations of

12  underlying testimony in evidence and documents and so forth.

13  It's the underlying evidence and exhibits which determines what

14  weight, if any, these charts and summaries deserve.  By placing

15  something on a chart, you don't give it any greater weight or

16  significance than the underlying exhibit or exhibits show.

17         So it's for you to decide whether the underlying

18  evidence is entitled to weight and, if so, to what extent.  And

19  you're entitled to consider the charts and summaries if you

20  find they assist you in analyzing and understanding the

21  evidence from which they were prepared, but, by themselves,

22  they add nothing to the case.

23         As I think I have told you before, you are the sole

24  judges of the credibility or truthfulness of any witness.  And

25  you and you alone, after discussing with each other, determine

74ijoset          C H A R G E

1   the weight and significance that each witness' testimony
2   deserves.
3          You should consider the testimony the witness gives as
4   well as all the evidence in the case which tends to tell you
5   whether the matter in the testimony is worthy of belief.  And
6   here again, you use your common sense as jurors.  You may
7   consider the witness' intelligence, motive and demeanor; that
8   is to say the manner in which he or she gives testimony on the
9   stand.  You may consider the opportunity the witness had to
10  observe or remember the facts concerning the testimony as well
11  as the plausibility or improbability or probability of the
12  testimony in light of all the other facts in the case.  You may
13  also consider any relationship which the witness has to either
14  side of the case or the manner in which any witness may be
15  affected by or interested in the outcome of the trial.
16         If testimony is unreasonable on its face or
17  inconsistent with other evidence or testimony which you do
18  believe, you may reject that evidence.  Now, there's no magic
19  formula to evaluate the truthfulness of a witness.  In your
20  everyday affairs, each of you determines for yourself the
21  reliability of statements made to you by other people, and
22  those same tests that you use in your everyday dealings should
23  be applied to your jury deliberations.  You use your common
24  sense.  You rely on your human experience.
25         You're instructed, members of the jury, that sworn

74ijoset          C H A R G E

1    testimony in a prior proceeding or trial or deposition has the
2    same sanctity as sworn testimony under oath given at trial
3    right here in the courtroom, and it is permissible to confront
4    a witness with prior inconsistent testimony which he or she may
5    have given in another trial or proceeding.  You may consider
6    that in weighing the credibility of the witness, and, in
7    fairness, you should consider any explanation which the witness
8    may give for any such inconsistency.

9              I wanted to mention the issue of so-called expert
10   witness testimony.  Ordinarily a witness is not permitted to
11   testify as to opinions, but only as to facts.  However, there's
12   an exception for this, and the law permits the opinions of
13   qualified experts on technical matters to be received into
14   evidence.  And this so-called expert may testify as to his or
15   her opinion on a subject about which he or she has specialized
16   knowledge or education.  And this testimony is permitted on the
17   theory that information from a person having special or
18   technical experience may assist you in determining the facts of
19   the case.

20             In weighing expert opinion testimony, you may consider
21   the expert's qualifications and the opinion and his or her
22   reasons given for the opinion, and you may give that testimony
23   such weight and significance as you feel it deserves.  You can
24   accept his or her opinion or reject it in whole or in part as
25   you believe proper.  And the determination of the facts in the

1      case rests solely with the jury, and that applies to the

2      testimony of persons having expert information in any

3      particular field.

4            The defendant did not testify in this trial, and you

5      are instructed that, under our Constitution, a defendant has no

6      obligation to testify or to present any evidence because, as I

7      explained earlier, it's the government's burden at all times to

8      prove the defendant guilty beyond a reasonable doubt of the

9      count in the indictment you're then considering.  And that

10     burden remains with the government throughout the entire trial,

11     and it never shifts to a defendant, and a defendant is never

12     required to prove he's innocent.

13           You may not attach any significance to the fact that

14     the defendant did not testify.  You may not draw any adverse

15     inference against him because he didn't take the witness stand.

16     Indeed, you may not discuss or consider this in any way during

17     your deliberations in the jury room.

18           You're instructed that the testimony of an alleged

19     accomplice, such as Hyman Fox, someone who has said he

20     participated in the commission of certain of the crimes charged

21     in this case, must be examined and weighed by the jury with

22     great care.

23           The fact that an alleged accomplice has entered into a

24     plea of guilty to the offense charged is not evidence of the

25     guilt of any other person, including the defendant.  I want to

74ijoset          C H A R G E

1    emphasize that point particularly.

2            There was some discussion yesterday that some of the

3    other people involved in some of the Cralin Enterprises may

4    have entered pleas of guilty.  That has no probative value in

5    this case.  Guilt is personal, and whether they chose to enter

6    pleas of guilty or not has no bearing on the guilt of this

7    defendant.  That's to be determined solely from the evidence in

8    the case of this trial.

9            With respect to the accomplice, the jury must

10   determine whether the testimony of the accomplice has been

11   affected by self-interest or by the agreement he has with the

12   government or by his own interest in the outcome of his case or

13   by prejudice or bias against this defendant.

14           In evaluating the credibility of a witness testifying

15   under a cooperation agreement with the government, you should

16   ask yourselves whether the witness would benefit more by lying

17   or more by telling the truth.  Was his testimony falsified in

18   any way because he believed or hoped that he would somehow

19   benefit by testifying falsely?  Or did he believe that his

20   interests would be best served by testifying truthfully?  If

21   you believe that the witness was so motivated, was the

22   motivation one which would cause him to lie or was it one which

23   would cause him to tell the truth?

24           The government argues, as it is permitted to do, that

25   it must take its witnesses where it finds them and must, at

74ijoset          C H A R G E

1    times, use the testimony of an accomplice because it would be

2    otherwise impossible or difficult to detect and prosecute

3    wrongdoers.

4          As with every other witness, you should consider all

5    the facts in the evidence, including the witness' demeanor,

6    strength of his recollection, his background, and the extent to

7    which his testimony is or is not corroborated by other evidence

8    in the case.  And just as you can with any other witness in the

9    trial, you can accept parts and reject parts of his testimony

10   as you perform your duty to judge his credibility and

11   reliability.

12         You may not draw any inference, favorable or

13   unfavorable, towards the government or the defendant from the

14   fact that any person other than the defendant was not named as

15   a defendant in this particular indictment submitted for your

16   verdict or is not on trial before you in this case.  You may

17   not speculate as to the reasons why other persons are not on

18   trial here.  That's a matter wholly outside your concern and

19   has no bearing on your function as jurors in deciding this

20   case.

21         I'm now going to explain the law with respect to the

22   charges in the indictment.  And as I mentioned to you earlier,

23   the indictment is merely a charge or accusation.  There are, as

24   you've heard already, 17 separate counts.  Each one must be

25   considered separately.  And as I told you earlier, and I want

1    to emphasize it, Mr. Josephberg is not on trial for anything

2    that's not contained in the indictment.

3            Count One charges Mr. Richard Josephberg with

4    attempting to evade the payment of income tax he owed to the

5    Internal Revenue Service for the years 1977 through 1980 and

6    1983 through 1985 inclusive.

7            Count Two charges Mr. Josephberg with conspiring or

8    entering into an illegal agreement or understanding to act

9    together with at least one other person for several criminal

10   purposes; one, to defraud the United States and the Internal

11   Revenue Service; two, to violate federal statutes making it a

12   crime to attempt to evade federal income taxes and file false

13   federal tax returns; and, three, to commit healthcare fraud by

14   scheming to defraud a healthcare benefit program known as the

15   Oxford Health Plans.  And they may be referred to as OHP from

16   time to time, but that's a business name of Oxford.

17           Counts Three and Four charge the defendant with

18   attempting to evade a substantial part of the income and

19   employment taxes he owed for the tax years 1997 and 1998.

20           Counts Five and Six charge Mr. Richard Josephberg with

21   signing false individual income tax returns for the tax years

22   1997 and 1998.

23           Counts Seven through Ten charge the defendant with

24   failing to file in a timely fashion his 1999 through 2002

25   individual tax returns.  Each count pertains to a different

74ijoset          C H A R G E

1    year.

2           Counts Eleven through Fifteen charge Mr. Richard

3    Josephberg with failing to pay the individual income taxes that

4    he owed for the years 1999 to 2003.  Each count is for a

5    separate year.

6           Count Sixteen charges him with corruptly endeavoring

7    to impair and impede the due administration of the Internal

8    Revenue laws by engaging in the conduct alleged in Counts One

9    through Four and Seven through Ten.

10          And Count Seventeen charges him with attempting to

11   defraud the healthcare benefit program of Oxford Health Plans

12   by means of false and fraudulent pretenses.

13          That's a summary of what the different counts are.

14          All of the charges in the indictment, with the

15   exception of Count Seventeen, involve tax crimes.

16          The internal Revenue Code is a statute passed by

17   Congress.  Because this is a self-governing country, the jury

18   is required to accept the Internal Revenue Code as it presently

19   stands even if you think that some of its provisions are too

20   complicated or unfair.

21          Under the Code, taxpayers are required to complete and

22   file honest returns, sign them under penalty of perjury, and

23   pay the tax as shown thereon.  And Congress has created

24   criminal statutes to impose criminal penalties to assure

25   compliance with the Code.

74ijoset          C H A R G E

1          You're instructed that the filing of federal income

2    taxes is not voluntary.  Individuals who have received income

3    in excess of the minimum amount for that year, as specified in

4    the Internal Revenue Code, are required to file federal income

5    tax returns where required by law and to pay the taxes imposed.

6          I further instruct you that the pressure of other

7    financial obligations is no defense to your obligations and

8    liabilities under the Internal Revenue Code as adopted by

9    Congress.

10          I want to say something preliminary about what this

11    trial is not about.  This trial has nothing to do with the

12    actual collection of any taxes that may be due to the

13    government.  This is a criminal trial, and the object of the

14    trial is to secure the enforcement of laws passed by Congress

15    which establish a federal crime to attempt to knowingly and

16    willfully defeat or evade the payment of taxes due or to fail

17    to sign returns or to fail to file honest returns and for other

18    charges as I have mentioned earlier and will mention later.

19          There's a distinction between civil liability imposed

20    upon a defendant for the nonpayment of a tax and criminal

21    responsibility for unlawful acts or conduct in violation of the

22    Internal Revenue Code.  And you are not concerned here with

23    civil liability; that is, whether or not taxes claimed to be

24    due have been paid or will be paid.  Rather, the issue here is

25    whether the government has proved beyond a reasonable doubt

74ijoset        C H A R G E

1    that the defendant knowingly and willfully committed the crimes

2    charged in the various counts in the indictment.  This is not a

3    collection case.

4            Count Two in the indictment is a conspiracy count.

5    The other counts are referred to by lawyers as substantive

6    counts.  And unlike the conspiracy charge, which is a charge of

7    agreeing together with one other person, at least one other

8    person, to commit one or more crimes, the substantive counts

9    are based on actual commission or attempted commission of the

10   offenses referred to as the objects of the conspiracy.

11           A conspiracy to commit a crime is an entirely separate

12   and different offense from the underlying substantive crime

13   which may be the object of the conspiracy.  The essence of the

14   crime of conspiracy is an agreement or understanding by two or

15   more people to violate other laws or to defraud the United

16   States followed by commission by a member of the conspiracy of

17   an overt act.  And I'll talk about overt acts in a moment.

18   Overt means open.

19           If a conspiracy exists, even if it fails in

20   accomplishing its object, it is still punishable as a crime.

21   So, in a conspiracy charge, there is no need to prove that the

22   crime or crimes which were the objective of the conspiracy were

23   actually committed.  By contrast, the substantive counts

24   require proof that the crime charged was actually committed,

25   but do not require proof of an agreement, nor is a

74ijoset        C H A R G E

1    co-participant necessary in order to convict on a substantive

2    crime.

3         Of course, if a defendant both participates in a

4    conspiracy and commits the crime or crimes which were the

5    object of the conspiracy, then the defendant would be guilty of

6    both the conspiracy and the substantive charge, each being

7    separate counts, as I'll explain to you shortly.

8         A crime has certain elements, and the elements each of

9    which must be proved beyond a reasonable doubt are different

10   for the different counts.  And I'll come to that in a moment.

11        Count One charges the defendant, Mr. Richard

12   Josephberg, with knowingly and willfully attempting to evade

13   the payment of income taxes that were assessed and due and

14   owing for the calendar years 1977 through 1998 by him and 1983

15   through 1985.  In simple terms, Count One charges the defendant

16   with attempting to evade payment of taxes that had previously

17   been determined and assessed by the Internal Revenue Service to

18   be due.

19        Counts Three and Four charge him with attempting to

20   evade the assessment or proper determination of income taxes

21   due and owing for the calendar years 1997 and 1998.

22        Counts Three and Four -- Counts One, Three and Four

23   all charge the violation of the same federal statute, Section

24   7201 of Title 26 of the United States Code.  You don't have to

25   remember the numbers, but you have to understand what the

74ijoset        C H A R G E

1    statute requires.  And that reads, in pertinent part:

2            "Any person who willfully attempts in any manner to

3    evade or defeat any tax imposed by law shall be guilty of the

4    offense of tax evasion."

5            That concludes a reading of the statute.

6            When I discuss, as I will now do, the elements of

7    these tax evasion charges, you should consider them not just in

8    relation to Counts One, Three and Four, but also in relation to

9    Count Two, because Count Two charges a conspiracy to accomplish

10   four different objects, one of which is to attempt to evade

11   Mr. Josephberg's income taxes.  So you are required to consider

12   my instructions on the substantive crimes when you consider the

13   objects of the conspiracy charge.

14           In order for the crime of tax evasion and violation of

15   the statute just read to you to be proved, the government must

16   establish beyond a reasonable doubt each of the following three

17   elements.  If any single element cannot be established as to a

18   particular count you're then considering beyond a reasonable

19   doubt, you must find a verdict of not guilty on that count and

20   go on to the next count until you've covered them all.  These

21   are the elements of the evasion counts:

22           First, that the taxpayer had substantial tax due and

23   owing;

24           Second, that the defendant committed an affirmative

25   act constituting an evasion or an attempt to evade the tax or

74ijoset        C H A R G E

1    tax due as described in the indictment; and,

2          Third, that he acted willfully in attempting to evade

3    the underlying tax debt with respect to Count One or the

4    assessment of tax with respect to Counts Three and Four.

5          For each of the tax evasion counts which correspond to

6    years 1977 through 1980 and 1983 to 1985 for Count One and 1997

7    and 1998 for Counts Three and Four, you must decide whether or

8    not the government has proved these three elements beyond a

9    reasonable doubt.  And each count and, therefore, each year,

10   has to be considered separately.

11         The first element of the offense is that the defendant

12   owed a substantial amount of federal income tax for the tax

13   year or years you're considering for the count that you're

14   presently considering.  And with regard to Count One, the

15   government contends that Mr. Richard Josephberg owed additional

16   taxes for the years 1997 to 1980 inclusive and 1983 to 1985

17   inclusive as a result of assessments made by the IRS based on

18   the disallowance of certain partnership losses claimed on the

19   income tax returns that he filed for those years.

20         You are instructed that assessments by the IRS

21   constitute prima facie -- that's a Latin word which means on

22   its face -- constitute sufficient evidence of the asserted tax

23   deficiencies.  You may, however, consider whether there is

24   evidence from which it can be concluded that the IRS improperly

25   or incorrectly assessed the taxes in determining whether

74ijoset        C H A R G E

1   Mr. Richard Josephberg owed additional taxes for any of those
2   years.  And you must consider all the evidence in the case and
3   consider and decide whether the government has proved beyond a
4   reasonable doubt that Mr. Josephberg owed substantial
5   additional income tax for the tax year or years that you're
6   then considering.

7           As I mentioned earlier, the government does not have
8   to prove the precise amount owed so long as it proves beyond a
9   reasonable doubt that it is substantial for the count of the
10  indictment you are then considering.

11          It is for you to decide whether a substantial tax
12  deficiency exists for the years in issue, and in making that
13  decision, you should consider all the evidence in the case.

14          With respect to Count One, the government does not
15  have to prove the exact amount of the taxes that he owed from
16  1977 through 1980 and for 1983 through 1985.  And the
17  government does not have to prove that he attempted to evade or
18  defeat payment of all the taxes for those time periods.
19  Instead, the government need only prove that the amount owed
20  from any one of those years was substantial and that he
21  attempted knowingly and willfully to evade or defeat all or
22  part -- all or a substantial part of it.

23          Whether the amount of the tax due is substantial is an
24  issue for you to decide.  Substantiality is not measured in
25  terms of gross or net income or by any particular percentage of

74ijoset        C H A R G E

1   the tax shown to be due and payable.  All of the attendant
2   circumstances must be taken into consideration.  You should
3   decide, based on all relevant factors, whether the tax owed, if
4   any, was substantial or merely trivial.

5          With regard to Counts Three and Four, the government
6   contends that the additional taxes due and owing for the years
7   1997 and 1998 arose from Richard Josephberg's filing of federal
8   income tax returns for those years that claimed false net
9   operating losses from a prior period which served to reduce the
10  tax liability for those years as shown on the return and, also,
11  and separately from the net operating loss issue, it failed to
12  report -- the return failed to report the wages paid to a
13  domestic employee and the tax due thereon.

14         The government may prove either or both of those, but
15  you cannot convict on any of those counts unless you're in
16  agreement as to which issue was involved.

17         If you find, based on all the evidence, that the
18  government has established beyond a reasonable doubt that there
19  was a tax due for the year or group of years at issue, then
20  this element has been satisfied.

21         It is not enough, as I said earlier, that some of you
22  believe that he had substantial taxes due and owing based on
23  false claims of net operating loss, or NOL, as it's been
24  called, and some don't and some of you believe that there was
25  substantial tax due and owing based on unpaid employment taxes.

74ijoset        C H A R G E

1    You must all be unanimous as to at least one of the two alleged

2    bases for substantial tax due and owing in order to find the

3    defendant guilty on these particular counts.

4            You're instructed that the federal tax law provides

5    that individual taxpayers may not claim losses from investments

6    in partnerships unless such investments are made with a genuine

7    economic profit motive.  This profit objective requires that

8    taxpayers like those who entered into some of these straddle

9    and government securities, repo transactions, enter into the

10   transaction primarily for profit.  If you have a profit motive,

11   then the losses you incur can be deductible even if there's no

12   profit.  But if there's no profit motive, then losses from the

13   transactions may not be properly deducted because such losses

14   lack economic substance.  A transaction lacks economic

15   substance if it cannot with reason be said to have a purpose or

16   substance or utility apart from the anticipated tax

17   consequences or tax benefits.

18           You're also instructed that income is taxable to the

19   person who earns it, and the person earning the income cannot

20   avoid taxation by entering into an arrangement whereby that

21   income is diverted or assigned or placed in the name of some

22   other person, such as a child of the taxpayer.

23           Now, such assignments known to tax lawyers as

24   anticipatory assignments of income are not recognized as a

25   means of avoiding tax liability.  A person who is firmly

74ijoset        C H A R G E

1    entitled to receive income, who makes an anticipatory gift of

2    it, is taxable just as if that person had received it and later

3    given it away.  It's not illegal to give it away, but it

4    doesn't change the tax consequences.  And there are no relevant

5    exceptions to the assignment of income doctrine.

6           Federal tax law also provides that property that is

7    transferred to a person as compensation for services, such as

8    stock, must be included in gross income of the person who

9    performed the services in the first year that the property is

10   transferred.  When shares of stock are issued as compensation

11   for services rendered, stock is valued on the date the shares

12   are issued irrespective of any restrictions stamped on the

13   stock certificate which lapse in the future.  The value of

14   restricted stock issued as compensation is determined by

15   looking at the fair market value of that stock on the date of

16   issuance irrespective of the restrictions, and that value is

17   taxable income in the year in which the stock was received.

18          The phrase to attempt to evade or defeat an income tax

19   involves two things.  First, the formation of an intent to

20   evade or defeat a tax or the payment thereof and, secondly,

21   thereafter willfully performing some act to accomplish the

22   purpose or intent to evade or defeat that tax.

23          The indictment charges in Count One that the defendant

24   knew and understood that for the calendar years 1977 to 1980

25   and 1983 to 1985, he owed substantial federal income tax and

74ijoset        C H A R G E

1    then tried in some way to evade the payment of that tax.  The
2    indictment further charges in Counts Three and Four that, with
3    respect to his tax obligations for the years 1997 and '98
4    respectively, he knew he owed substantial federal income tax
5    and then tried in some way to evade or conceal from the
6    Internal Revenue Service the amount of tax owed.

7            Therefore, in order to show an attempt to evade or
8    defeat a tax or the payment thereof, the government must prove
9    beyond a reasonable doubt that the defendant, Richard
10   Josephberg, intended to evade or defeat the tax due or payment
11   thereof and that he also committed some act designed to conceal
12   or misrepresent his income or his assets from the Internal
13   Revenue Service.

14           Any intentional conduct, the likely effect of which
15   would be to mislead or conceal for tax evasion purposes, is
16   sufficient to establish an affirmative act of attempting to
17   evade or defeat income taxes.  The only requirement is that the
18   defendant must take some affirmative action with that purpose
19   in mind.

20           Conduct that constitutes or is sufficient to establish
21   an affirmative attempt to evade a tax or payment thereof
22   includes the use of bank accounts in the names of others;
23   transferring income or money or property in an attempt to
24   conceal ownership; causing debts to be paid through and in the
25   name of others; use of corporate entities to pay personal

74ijoset        C H A R G E

1    bills; making ownership of companies appear falsely in the

2    names of others; making of false statements to the IRS; filing

3    of false tax returns; or any other conduct, the likely effect

4    of which would be to mislead or conceal, including directing

5    others to do any of the things that I've just mentioned.

6         Although the government must prove that the defendant

7    committed some affirmative act constituting an attempt to

8    evade, it need not prove each act alleged in the indictment.

9    The proof of one affirmative act is enough.

10        With regard to Count One, the government must prove

11   that he took some affirmative step during the period from 1995

12   through the date of the indictment with the intention of hiding

13   or concealing income or assets from the Internal Revenue

14   Service which was seeking to collect the taxes due for the

15   years '77 to 1980 and '83 to '85.

16        With regard to Counts Three and Four, the government

17   must prove that Mr. Richard Josephberg took some affirmative

18   step during the year charged or in connection with the filing

19   of the return for the year at issue, such as filing a tax

20   return understating his tax liability through the inclusion of

21   a net operating loss deduction that he knew was not valid, to

22   conceal his true tax liability for that year from the Internal

23   Revenue Service.

24        Where more than one particular affirmative act of

25   evasion is charged, you must be unanimous as to at least one of

74ijoset          C H A R G E

1    the acts before you may give a unanimous verdict and before you

2    can conclude beyond a reasonable doubt that the government met

3    its burden to prove that element.  It would not be sufficient

4    if some of you agree on one alleged affirmative act of evasion

5    and the rest of you don't agree on that one, but you agree on

6    some other affirmative act.  That would not be unanimous, and

7    you would have to continue discussion, because it must be

8    unanimous as to what the affirmative act of evasion is before a

9    verdict of guilty could be found, and if you don't so agree,

10   your obligation is to find the defendant not guilty.

11          The third element of these charges which the

12   government must prove beyond a reasonable doubt is that the

13   defendant acted knowingly and willfully.  Those are important

14   words.  They recur in connection with other counts.  And in

15   connection with these counts, the government must prove beyond

16   a reasonable doubt that the defendant knew that he owed

17   substantially more federal income tax for the calendar years

18   1997 and '98 than was declared on his tax returns for those

19   years and owed substantial taxes that had been assessed by the

20   IRS for the years 1977 to 1980 and 1983 to 1985.  Whether he

21   had this knowledge is an issue of fact to be determined on the

22   basis of all the evidence.

23          An act is done knowingly only if it's done purposely

24   and deliberately and not because of mistake, accident,

25   negligence or some other innocent reason.

74ijoset        C H A R G E

1              In this regard, I instruct you that the Internal

2       Revenue Code provides that the fact that an individual's name

3       is signed to a return is evidence that the return was actually

4       signed by him.  That appears not to be disputed in this

5       particular case.  If you find that he signed the return, you

6       may draw the inference that he had knowledge of the contents of

7       any tax return that he signed.

8              I also instruct you that, in determining whether the

9       defendant acted knowingly, you may consider whether he

10      deliberately closed his eyes to what otherwise would have been

11      obvious to him.  If you find that he was aware of a high

12      probability that he owed substantially more tax than was

13      declared on his return for a particular year and that he acted

14      with a conscious purpose to avoid learning the truth about

15      whether or not he owed substantially more tax than was shown on

16      the return for a particular year, then this knowledge element

17      in the charge may be satisfied by that.  However, guilty

18      knowledge may not be established by demonstrating that the

19      defendant was merely negligent or foolish or mistaken.  If you

20      find that he actually believed in good faith that he did not

21      owe substantially more tax, he may not be convicted of the

22      crime charged in the particular count you are then considering.

23             It's entirely a matter for your consideration whether

24      you find that the defendant deliberately closed his eyes to

25      facts known to him and any inferences to be drawn from the

74ijoset          C H A R G E

1  evidence on this issue.  This issue of whether he acted

2  knowingly and willfully has to be decided separately as to each

3  count in the indictment.

4          As I said earlier, a willful act must be proved beyond

5  a reasonable doubt.  And in this context, it's defined as a

6  voluntary and intentional violation of a known legal duty.  So

7  the government must prove beyond a reasonable doubt that he

8  possessed the specific criminal intent to delay or evade the

9  payment or assessment of taxes that he knew was his duty to

10 pay.

11         In deciding whether the defendant acted willfully, you

12 may consider the way he conducted affairs.  If a person

13 deliberately conducts his affairs in a way that would likely

14 result in deception, concealment of the truth, or the evasion

15 of taxes, it's permissible to infer that he willfully intends

16 to evade taxes.

17         In this case, the government has argued that

18 Mr. Josephberg engaged in a pattern of using entities and

19 relatives and making false statements to the IRS in order to

20 conceal income and assets from the collection efforts of the

21 IRS, and that he claimed net operating losses which he knew

22 were bogus to offset income or reduce or eliminate his tax

23 liability.  And if you find there was such a pattern, you may

24 consider that finding, along with the rest of the evidence, in

25 deciding whether or not the defendant willfully attempted to

74ijoset        C H A R G E

1    evade taxes.  You're not required to draw such an inference,

2    but you may do so.

3          A defendant does not act willfully if he believes, in

4    good faith, that his actions comply with the law.

5          If the defendant actually believed that what he was

6    doing was in accord with the tax statutes and that he paid all

7    the taxes he owed, he cannot be said to have had the specific

8    criminal intent to evade taxes.  Thus, if you find that

9    Mr. Richard Josephberg, in good faith, believed that he owed no

10   additional taxes, even if that belief was unreasonable or

11   irrational or wrong, then you should find him not guilty.

12   However, you may consider whether the defendant's belief was

13   actually reasonable or actually unreasonable in deciding

14   whether or not he held that belief in good faith.

15         Counts Three and Four charge the defendant, in part,

16   with attempting to evade FICA and Medicare taxes due on wages

17   paid to a household employee, Norma Grant.

18         The Federal Insurance Contributions Act, so-called

19   FICA, imposes a tax on employers that includes two elements;

20   old-age, survivor and disability insurance, which is commonly

21   called Social Security, and hospital insurance, which is

22   commonly referred to as Medicare.  Social Security taxes are

23   used to fund retirement and disability benefits, while Medicare

24   taxes are used to provide health and medical benefits for

25   elderly people and disabled people.

74ijoset          C H A R G E

1            An employer is required to calculate FICA taxes based

2    on the amount of wages that are actually or constructively paid

3    to an employee and pay over those taxes to the IRS.  An

4    individual who employs a household employee such as a

5    housekeeper or a maid or a nanny or some other person that

6    works in or around the individual's private residence and pays

7    over a specific amount of wages must pay FICA taxes and

8    Medicare taxes on those wages.  And for the years 1997 and

9    1998, an employer who paid a household employee wages more than

10   $1,000 for 1997 and $1,100 for 1998 per year was required to

11   pay such taxes on those wages.

12           In order for Mr. Josephberg to be obligated to pay

13   so-called FICA and Medicare taxes on the payments made to

14   Ms. Norma Grant, it must be established by the government

15   beyond a reasonable doubt that Norma Grant was his employee.

16           An individual who provides services to another is an

17   employee of that person if the relationship between the

18   individual and the person for whom the services are performed

19   is the legal relationship of employer and employee.  Generally,

20   the relationship of employer and employee exists when the

21   person for whom the services are performed has a right to

22   control and direct the individual who performs the services not

23   only as to the results to be accomplished, but also as to the

24   means and the details by which the result is accomplished.  In

25   this connection, it's not necessary that the employer actually

74ijoset        C H A R G E

1    direct or control the manner in which the services are

2    performed.  It's sufficient if the employer has the right to do

3    so.

4         The right to discharge somebody is also an important

5    factor in indicating whether the person possessing that right

6    is an employer.  Other factors characteristic of an employer,

7    but not necessarily present in every case, include the

8    furnishing of tools and the furnishing of a place to work.  On

9    the other hand, if an individual is subject to the controlled

10   direction of another merely as to the result to be accomplished

11   by the work and not the method or means of accomplishing the

12   result, that individual is an independent contractor.

13        The IRS has taken the position that an individual

14   performing domestic services in a private home is an employee

15   of the person who directs and controls the services.

16        Before you may conclude beyond a reasonable doubt that

17   Mr. Josephberg owed employment taxes for Ms. Grant for the

18   purposes of the willfulness element of the offense of tax

19   evasion under Section 7201 and subscribing a materially false

20   return, Section 7206(1), which I'll come to later, you must be

21   convinced beyond a reasonable doubt that Mr. Josephberg was

22   aware that Norma Grant was his employee, as the law defines

23   that term, as opposed to being an independent contractor for

24   whom such tax payments are not required.

25        The defendant contends that he acted in a good-faith

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

74ijoset        C H A R G E

1    belief that Norma Grant was an independent contractor.  You may

2    not conclude that he knowingly and willfully failed to pay

3    employment taxes unless the government proves to your

4    satisfaction beyond a reasonable doubt that he knowingly and

5    willfully acted in violation of the law as opposed to relying

6    on a good-faith belief that Miss Grant was an independent

7    contractor.

8            The IRS has taken the position that there are 20

9    factors which may be considered as guides as to whether

10   sufficient control is present to establish an employee/employer

11   relationship.  The importance of any particular factor varies

12   depending on the context, and no one factor is controlling.

13   And these are the 20 factors:

14           Instructions.  A worker who is required to comply with

15   the other person's instructions about when, where and how he or

16   she is to work is ordinarily an employee.  This control factor

17   is present if the person or persons for whom the services are

18   performed have the right to require compliance with

19   instructions.

20           Training.  Training a worker by requiring an

21   experienced employee to work with the worker, by corresponding

22   with the worker, by requiring the worker to attend meetings, or

23   by using other methods, indicates that the person or persons

24   for whom the services are performed want services performed in

25   a particular method or manner.

74ijoset          C H A R G E

1            Integration.  Integration of the worker's services
2       into the business operations generally show that the worker is
3       subject to direction and control.  When the success or
4       continuation of the business depends to an appreciable degree
5       upon the performance of certain services, the workers who
6       perform those services must necessarily be subject to a certain
7       amount of control by the owner of the business.

8            4.  Services rendered personally.  If the services
9       must be performed personally, presumably the person or persons
10      for whom the services are employed are interested in the
11      methods used to accomplish the work, as well as any results.

12           Hiring, supervising and paying assistants.  If the
13      person or persons for whom the services are performed hire,
14      supervise and pay assistants, that factor generally shows
15      control over the worker on the jobs.  However, if one worker
16      hires and supervises and pays the other assistants pursuant to
17      a contract under which the worker agrees to provide materials
18      and labor and under which the worker is responsible only for
19      the attainment of a result, this factor indicates an
20      independent contractor status.

21           6.  Continuing relationship.  A continuing
22      relationship between the worker and the person or persons for
23      whom the services are performed indicates that an
24      employer/employee relationship exists.  A continuing
25      relationship may exist where work is performed at frequently

74ijoset      C H A R G E

1    recurring, although irregular, intervals.

2            7.   Set hours of work.  The establishment of set hours

3    of work by the person or persons for whom the services are

4    performed is a factor indicating control.

5            8.   Full time required.  If the worker must devote

6    substantially full time to the business of a person or persons

7    for whom the services are performed, such person or persons

8    have control over the amount of time the worker spends working

9    and impliedly restrict the worker from doing other gainful

10   work.  An independent contractor, on the other hand, is free to

11   work when and for whom he or she chooses.

12           9.   Doing the work on the employer's premises.  If the

13   work is performed on the premises of the person or persons for

14   whom the services is performed, that factor suggests control

15   over the worker, especially if the work could be done

16   elsewhere.  Work done off the premises of the person or persons

17   receiving the services, such as at the office of the worker,

18   indicates some freedom from control.  However, this fact by

19   itself does not mean the worker is not an employee.  The

20   importance of this factor depends on the nature of the service

21   involved and the extent to which the employer generally would

22   require the employees perform such services on the employer's

23   premises.  Control over the place of work is indicated when the

24   person or persons for whom the services are performed have the

25   right to compel the worker to travel a designated route to

74ijoset        C H A R G E

1   canvass a territory within a certain time or to work at
2   specific places as required.

3        10.  Order or sequence set.  If a worker must perform
4   services in the order or sequence set by the person or persons
5   for whom the services are performed, that factor shows the
6   worker is not free to follow the worker's own pattern of work,
7   but must follow the established routines and schedule of the
8   person or persons from whom the services are performed.  Often,
9   because of the nature and occupation, the person or persons for
10  whom the services are performed do not set the order of
11  services or set the order infrequently.  It is sufficient to
12  show control, however, if such person or persons retain the
13  right to do so.

14       11.  Oral or written reports.  A requirement that the
15  worker submit regular or written reports to the person or
16  persons for whom the services are performed indicates a degree
17  of control.

18       12.  Payment by the hour, week or month.  Payment by
19  the hour, week or month generally points to an
20  employer/employee relationship providing that this payment is
21  not just a convenient way of paying a lump sum agreed upon as
22  the cost of the job.  Payment made by the job or on a straight
23  commission generally indicates that the worker is an
24  independent contractor.

25       13.  Payment of business and/or traveling expenses.

74ijoset        C H A R G E

If the person or persons for whom the services are performed
ordinarily pay the workers business and/or traveling expenses,
the worker is generally an employee.  An employer, to be able
to control expenses, generally retains the right to regulate
and the worker's business activities.

14.   Furnishing of tools and materials.  The fact that
the person or persons for whom the services are performed
furnish significant tools, materials and other equipment tends
to show the existence of an employer/employee relationship.

15.   Significant investment.  If the worker invests in
facilities that are used by the worker in performing services
and are not typically maintained by employees, such as the
maintenance of an office rented at fair value from an unrelated
party, that factor tends to indicate that the worker is an
independent contractor.  On the other hand, lack of investment
in facilities indicates dependence on the person or persons for
whom the services are performed for such facilities and,
accordingly, the existence of an employer/employee
relationship.  Special scrutiny is required with respect to
certain types of facilities, such as home offices.

16.   Realization of profit or loss.  The worker who
can realize a profit or suffer a loss as a result of the
worker's service in addition to the profit or loss ordinarily
realized by employees is generally an independent contractor,
but the worker who cannot is an employee.  For example, if the

74ijoset          C H A R G E

1    worker is subject to a real risk of economic loss due to

2    significant investments or a bona fide liability for expenses,

3    such as salary payments to unrelated employees, that factor

4    indicates that the worker is an independent contractor.  The

5    risk that a worker will not receive payment for his or her

6    services, however, is common to both independent contractors

7    and employees and, therefore, does not constitute sufficient

8    economic risk to support treatment as an independent

9    contractor.

10          17.  Working for more than one firm at a time.  If a

11    worker performs more than de minimus services for a multiple of

12    unrelated persons or firms at the same time, that factor

13    generally indicates that the worker is an independent

14    contractor.  However, a worker who performs services for more

15    than one person may be an employee of each of the persons,

16    especially where such persons are part of the same service

17    arrangement

18          18.  Making services available to the general public.

19    The fact that a worker makes his or her services available to

20    the general public on a regular and consistent basis indicates

21    an independent contractor relationship.

22          19.  Right to discharge.  The right to discharge a

23    worker is a factor indicating that the worker is an employee.

24    The person possessing the right is an employer.  An employer

25    exercises control through the threat of dismissal, which causes

74ijoset          C H A R G E

1    the worker to obey the employer's instructions.  An independent

2    contractor, on the other hand, cannot be fired so long as the

3    independent contractor produces a result that meets the

4    contract specifications.

5          20.  Right to terminate.  If the worker has the right

6    to end his or her relationship with the person for whom the

7    services are performed at any time he or she wishes, without

8    incurring liability, that factor indicates an employer/employee

9    relationship.

10          That's the end of the 20 criteria.

11          Count Two of the indictment charges that the defendant

12    violated Section 371 of Title 18, United States Code.  That's a

13    different statute.  And here again, you don't have to know the

14    number of the statute, but it provides in substance:

15          "If two or more persons conspire either to commit any

16    offense against the United States or to defraud the United

17    States or any agency thereof in any manner or for any purpose

18    and one or more of such persons do any act to effect the object

19    of the conspiracy, each is guilty of a crime."

20          That concludes a reading of that statute in relevant

21    part.

22          Count Two of the indictment charges that from in or

23    about 1995 through in or about 2002, in the Southern District

24    of New York and elsewhere, Richard Josephberg, the defendant,

25    together with others known and unknown to the grand jury,

74ijoset        C H A R G E

1    unlawfully, willfully and knowingly did combine, conspire,

2    confederate and agree together to defraud the United States and

3    an agency thereof, to wit, the Internal Revenue Service of the

4    United States Department of the Treasury, and to commit

5    offenses against the United States, to wit, violation of Title

6    26, United States Code, Section 7201 and 7206 and Title 18,

7    United States Code, Section 1347.

8            It was a part and object of the conspiracy that during

9    the period 1997 through 2002, Richard Josephberg, the

10   defendant, and others, known and unknown, unlawfully, willfully

11   and knowingly would and did defraud the United States and the

12   IRS by impeding, impairing, defeating and obstructing the

13   lawful government functions of the IRS in the ascertainment,

14   evaluation, assessment, and collection of income taxes.

15           It was further a part and object of the conspiracy

16   that during the period 1997 through 1999, Richard Josephberg,

17   the defendant, and others, known and unknown, unlawfully,

18   willfully and knowingly would and did attempt to evade and

19   defeat a substantial part of the income taxes due and owing by

20   defendant Richard Josephberg for the tax years 1994 through

21   1998, in violation of Title 26, United States Code, Section

22   7201.

23           It was further a part and object of the conspiracy

24   that during the period 1997 through 1999, Richard Josephberg,

25   the defendant, and others, known and unknown, unlawfully,

74ijoset        C H A R G E

1    willfully, and knowingly would and did make and subscribe

2    certain individual income tax returns, Forms 1040, for Richard

3    Josephberg for tax years 1994 through 1998, which returns

4    contained and were verified by written declarations that they

5    were made under the penalty of perjury and which Richard

6    Josephberg, the defendant, and others did not believe to be

7    true and correct as to every material matter, in violation of

8    Title 26, United States Code, Section 7206.

9            It was further a part and object of the conspiracy

10   that during the period 1997 through 2002, Richard Josephberg,

11   the defendant, and others, known and unknown, unlawfully,

12   willfully and knowingly would and did execute and attempt to

13   execute a scheme and artifice to defraud a health benefit --

14   healthcare benefit program, to wit, the Oxford Health Plans,

15   OHP, and to obtain by means of false and fraudulent pretenses,

16   representations and promises money and property owned by and

17   under the custody and control of OHP in connection with a

18   delivery payment for healthcare payments, items and services,

19   in violation of Title 18, United States Code, Section 1347.

20           In order to find the defendant guilty of the crime of

21   conspiracy under this particular count, the government must

22   prove beyond a reasonable doubt the following three elements.

23   These are different elements.  These elements pertain only to

24   this particular count.

25           First, that there came into existence an agreement or

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

74ijoset        C H A R G E

1  understanding between two or more persons to violate the law

2  together or to defraud the United States together;

3        Secondly, that the defendant knowingly and unlawfully

4  became a member of the conspiracy; that is, that he knowingly

5  associated himself unlawfully with and participated in the

6  charged conspiracy with knowledge of its illegal purposes; and,

7        Third, that any one of the members of the conspiracy,

8  not necessarily the defendant, but any one of the members

9  involved, knowingly and willfully committed at least one of the

10  overt acts charged in the indictment in furtherance of the

11  conspiracy.

12        I'll explain the concept of the overt act in a moment,

13  and I'll read you the overt acts as listed in the conspiracy

14  charge, but first I want to speak of the three elements.

15        As I said earlier, a conspiracy is an agreement or

16  combination or understanding of two or more persons, each of

17  whom are committing the crime of conspiracy, to accomplish by

18  concerted action a criminal or unlawful purpose.  And the

19  essence of the crime is the agreement followed by an overt act.

20        And so the first element which must be proved beyond a

21  reasonable doubt is that two or more persons entered into this

22  unlawful agreement as charged in the indictment.

23        You need not find that they met together and entered

24  into any express or formal agreement, and you don't have to

25  find that they stated in words or writing what the scheme was

74ijoset        C H A R G E

1    or what its objects or purposes were or every precise detail of

2    the scheme or the means by which it would be accomplished.

3    Indeed, it would be most unusual if there were such a formal

4    document or specific oral agreement.  Common sense will tell

5    you that when people get together to enter into a criminal

6    conspiracy to violate the law, much is left to unexpressed

7    understanding, and the conspirators do not usually reduce their

8    agreements to writing or acknowledge them before a notary

9    public, nor do they usually publicly proclaim their purpose or

10   plans.  By its very nature, a conspiracy is usually secret, and

11   if the actions were taken in the open, the purpose behind those

12   actions is often known only to the conspirators.

13        It's sufficient if the government proves beyond a

14   reasonable doubt that there was a mutual understanding, either

15   spoken or unspoken, between two or more people to cooperate

16   with each other and act together to accomplish an unlawful act

17   as charged.  And you may find that the existence of an

18   agreement to disobey or disregard the law has been established

19   by direct proof.  Ordinarily, since conspiracy is usually

20   secretly, you may also infer its existence from the

21   circumstances of the case and the conduct of the parties

22   involved.  In such a situation, actions often speak louder than

23   words.  And you may infer from the totality of the evidence

24   whether an agreement existed beyond a reasonable doubt.

25        In this case, the defendant is charged with conspiring

74ijoset        C H A R G E

1    to accomplish four different illegal objectives, the first of
2    which, it's alleged, was agreed to being accomplished was to
3    defraud the United States and its agency, the IRS.  The second
4    alleged object is to attempt to evade a substantial amount of
5    taxes due and owing by Mr. Josephberg for the years 1994
6    through 1998.  The third object was to make and subscribe false
7    personal tax returns for him for those years 1994 through 1998.
8    And the fourth object was to execute a scheme and artifice to
9    defraud Oxford Health Plans, which is a healthcare benefit
10   plan.

11          It's not necessary for you to find that the conspiracy
12   embodied all of these four unlawful objectives.  It's
13   sufficient if you find beyond a reasonable doubt that the
14   conspirators agreed together, expressly or impliedly, on any
15   one of the four illegal objectives.

16          If the government fails to prove that at least one of
17   the four objectives was an object of the conspiracy in which
18   the defendant participated, then you must find the defendant
19   not guilty as to this particular count.  However, if you find
20   unanimously that it was the purpose of the conspiracy to
21   accomplish any single one of the four objectives -- and you
22   have to be unanimous on at least one of them.  It wouldn't do
23   if some felt one purpose was proved and the others disagreed,
24   but they thought a different purpose was proved.  If you're
25   unanimous on any one of the four specific objectives, then that

74ijoset        C H A R G E

 1   particular element of the charge has been satisfied.

 2          The second element which has to be proved is that he

 3   knowingly and willfully joined the conspiracy with a full

 4   understanding of its illegal objects.

 5          I defined the words knowingly and willfully for you

 6   previously, and those same definitions given to you apply

 7   throughout the case.

 8          Knowledge is a matter of inference from the proven

 9   facts.  There's no way to look into a person's mind and find

10   out what that person was thinking at some time in the past.

11   However, you do have before you the evidence in the case from

12   which you may, but you need not, infer knowledge, and you will

13   piece together the proof and determine whether or not the

14   government has proved beyond a reasonable doubt that the

15   defendant knew of the unlawful purposes of the conspiracy and

16   had a stake in the outcome.

17          The Knowledge requirement is not satisfied by

18   demonstrating that he was merely negligent, foolish or

19   mistaken.  And mere association by one person with another does

20   not make that person a member of the conspiracy even when

21   coupled with knowledge that a conspiracy is taking place.  Mere

22   presence at the scene, even coupled with knowledge that the

23   crime is taking place, is not sufficient to support a

24   conviction.  The person must know the purposes of the

25   conspiracy, or at least one of them, and have the intention of

74ijoset          C H A R G E

1    making it succeed.

2          I now come to the issue of the overt acts.  The third

3    element which the government must prove beyond a reasonable

4    doubt to establish the offense of conspiracy is that at least

5    one of the conspirators committed at least one of the overt

6    acts charged in the indictment in furtherance of the object or

7    one or more of the objects of the conspiracy.  There must be

8    something more than just an agreement.  It's perfectly possible

9    for people to agree together to commit a crime and then leave

10   each other's company and nobody does anything, in which case it

11   was only talk, it's not a crime.  It becomes a crime after an

12   overt act -- at least one overt act is committed by at least

13   one member of the conspiracy in furtherance of the illegal

14   purposes of the conspiracy.  The act itself does not have to be

15   illegal.

16         These are the overt acts charged in the indictment:

17         On or about July 17th, 1997, Richard Josephberg caused

18   to be filed with the IRS U.S. individual income tax returns,

19   Forms 1040, for himself for the tax years 1994 through 1996,

20   each of which tax return contained an NOL, net operating loss,

21   of in excess of $1,500,000.

22         In or about September 1998, Richard Josephberg had a

23   conversation with the accountant relating to health insurance

24   coverage for Richard Josephberg's wife.  On or about September

25   23, 1998, Richard Josephberg caused a false and fictitious

74ijoset        C H A R G E

1   Schedule C to be sent to OHP via the United States Mail.

2               On or about October 15th, 1998, Richard Josephberg

3   caused a false and fictitious Schedule C and a false and

4   fictitious New York State employer tax form to be sent to OHP

5   via Federal Express.

6               On or about September 30, 1999, Richard Josephberg

7   caused to be filed with the IRS U.S. individual income tax

8   returns, Forms 1040, for himself for the years 1997 and 1998,

9   each of which tax return contained an NOL of in excess of

10  $1,280,000.

11              That concludes a reading of the overt acts.

12              It's not required by the government to prove all of

13  the overt acts alleged in the indictment.  It's enough if the

14  government proves that at least one of the overt acts was

15  committed in furtherance of the conspiracy.  However, here

16  again, you would have to agree on at least one overt act that

17  was committed in order for you to be unanimous as to this

18  count.

19              Similarly, it's not necessary for the government to

20  prove that each member of the conspiracy committed or

21  participated in an overt act.  It's sufficient if you find that

22  at least one overt act was, in fact, performed by at least one

23  conspirator, whether it was the defendant or another

24  co-conspirator, to further the conspiracy during its existence.

25              The overt act may have been committed at precisely the

74ijoset        C H A R G E

1    time alleged in the indictment, and it's sufficient if you're

2    convinced beyond a reasonable doubt that it occurred at or

3    about the time and place stated.

4          An overt act must have been done knowingly and

5    willfully in furtherance of the object of the conspiracy, and,

6    standing alone, it may be innocent.

7          Finally, you must find either that the agreement was

8    formed or that one of the overt acts was committed in the

9    Southern District of New York, which includes Westchester,

10   Putnam, Dutchess, Rockland, Orange, Sullivan, New York and

11   Bronx Counties.

12         With respect to Counts Five and Six, the relevant part

13   of the indictment reads as follows:

14         On or about September 30th, 1999, in the Southern

15   District of New York and elsewhere, Richard Josephberg, the

16   defendant, unlawfully, willfully and knowingly did make and

17   subscribe U.S. individual income tax returns, Forms 1040, for

18   the tax years set forth below, which returns contained and were

19   verified by the written declaration of Richard Josephberg that

20   they were made under penalties of perjury and which returns

21   Richard Josephberg did not believe to be true and correct as to

22   every material matter in that Richard Josephberg, the

23   defendant, A, claimed net operating losses in the amounts set

24   forth below and, B, omitted household employment tax

25   obligations whereas Richard Josephberg then and there well knew

74ijoset        C H A R G E

1   and believed that he was not entitled to claim those losses or

2   omit those tax obligations.

3          This charges a violation of Section 7206(1) of Title

4   26 of the Code, and that reads, in relevant part, as follows:

5          "Any person who willfully makes and subscribes any

6   return, statement or other document which contains or is

7   verified by a written declaration that it is made under the

8   penalties of perjury and which he does not believe to be true

9   and correct as to every material matter shall be guilty of a

10  crime."

11         That concludes a reading of the statute.

12         The Revenue Service, the IRS, must have truthful and

13  complete disclosure on all tax returns in order to properly

14  audit and compute the correct tax liability for each return

15  that is filed.  And in furtherance of this objective, this

16  statute was passed by Congress which concerns the taxpayer's

17  belief in the truthfulness and correctness of the statements

18  which he or she submits on the tax return.

19         The section prohibits false statements and does not

20  deal with income tax evasion.  That's the statute I previously

21  read to you.

22         Intent to evade taxes is not an element of the crime

23  of filing a false tax return, and there is no requirement that

24  the false statement resulted in any underpayment of tax.

25  There's no requirement of any proof of tax due on these counts.

74ijoset        C H A R G E

1    Instead, this section is designed to ensure that the government

2    is provided by the taxpayer with accurate and complete,

3    truthful return information.

4            In order to find the defendant guilty of the offense

5    of filing a false or fraudulent tax return, which is the

6    offense charged in Counts Five and Six, the government must

7    prove each of the following elements beyond a reasonable doubt.

8    If any single element of these charges is not proved beyond a

9    reasonable doubt as to the count you're then considering, you

10   must find a verdict of not guilty on that count.  Here's the

11   elements for the false filing counts:

12           First, that the defendant subscribed to them, meaning

13   that he signed and filed the tax return;

14           Second, that the return contained a written

15   declaration that it was made under penalty of perjury, printed

16   declaration on the form;

17           Third, that the defendant, when he signed the return,

18   did not believe the return to be true and correct as to every

19   material matter; and,

20           Fourth, that the defendant acted willfully in doing

21   so.

22           The tax return is subscribed at the time it's signed.

23   A tax return is filed at the time it's delivered to the

24   Internal Revenue Service.  In addition, the Internal Revenue

25   Code provides that the fact that an individual's name is signed

74ijoset        C H A R G E

1    to a return is evidence that the return was actually signed by

2    him.

3            If you conclude beyond a reasonable doubt that he

4    signed the tax return, you may also draw the inference that he

5    had knowledge of the contents of the return.

6            The second element which must be proved beyond a

7    reasonable doubt is that the return contained a written

8    declaration that it was made under the penalty of perjury.  And

9    to satisfy this element, the government must show that the face

10   of the return contained a printed statement to that effect.

11   And you must make this determination simply by looking at the

12   return in issue.  Either it's printed on the return or it's

13   not.

14           The third element is that the government must prove

15   beyond a reasonable doubt that the defendant did not believe

16   the return to be true and correct as to every material matter.

17   To prove this element, the government must prove that the

18   return was materially false and that the defendant knew that it

19   was false.

20           A false statement on the return must be material.

21   This means that a statement on a line in the return is material

22   if the information required to be reported on that line of the

23   return is capable of influencing or impeding the IRS in

24   verifying or auditing the return.  In other words, the test of

25   materiality in these counts is whether the information required

74ijoset        C H A R G E

1    to be reported on the tax return in issue was important for the

2    proper evaluation of the accuracy of the tax return.

3            The indictment in this case charges that the tax

4    return listed in Counts Five and Six were false and that they

5    improperly claimed net operating losses and they left out or

6    omitted household employment taxes.  To satisfy this element,

7    the government must also prove that the defendant knew that the

8    statement was false.  Here again, there's two separate

9    falsehoods claimed, and unless you're unanimous on at least one

10   of them, you cannot convict on either of these counts.

11           I previously defined to you the meanings of

12   intentionally and willfully, and those definitions apply

13   throughout the instructions.

14           You may infer knowledge if you find that the defendant

15   deliberately avoided learning whether a tax return was false as

16   to a material matter.  I also instruct you that, although the

17   government must show the false statement made was as to a

18   material matter -- in other words, a matter which would be

19   important to the computation of his proper tax -- the defendant

20   need not have known that the matter was material.

21           The fourth element is that he must have acted

22   willfully.  And here again, the same instructions given as to

23   the meaning of that provision apply to all counts.

24           The indictment charges the defendant, in Counts Seven

25   through Ten, with failure to timely file a tax return for the

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

74ijoset        C H A R G E

1    years 1999 to 2002.  The indictment reads as follows:

2            On or about the return due dates set forth below, in

3    the Southern District of New York, Richard Josephberg, the

4    defendant, unlawfully, willfully and knowingly did fail to make

5    an income tax return for the calendar years stated below to the

6    District Director of the Internal Revenue Service for the

7    Internal District of Manhattan or to the Director of Internal

8    Revenue Service Center in Holtzville, New York, or to any other

9    proper officer of the United States, stating specifically the

10   items of his gross income and any deductions or credits to

11   which he was entitled, whereas Richard Josephberg, the

12   defendant, then and there well knew and believed he had gross

13   income in excess of a hundred thousand dollars for each such

14   years and, by reason of such income, he was required by law,

15   following the close of each calendar year and on or before each

16   of the return due dates stated below, to make said income tax

17   returns to said District Director of the Internal Revenue

18   Service, to said Director of the Internal Revenue Service

19   Center, or its said proper officers.

20           This indictment charges a violation of Section 7203 of

21   Title 26, and that provides, in relevant part:

22           "Any person required by this Title or by regulations

23   made under the authority thereof to make a return who willfully

24   fails to make such a return at the time or times required by

25   law or regulations shall be guilty of a crime."

74ijoset        C H A R G E

1          And that concludes a reading of that particular
2     statute.
3          The elements for these counts that must be established
4     beyond a reasonable doubt are that:
5          First, the defendant was required to file an income
6     tax return for the tax year in issue;
7          Second, that the defendant failed to file an income
8     tax return at the time due for the tax year in issue; and,
9          Third, that his failure to file the income tax return
10    for the tax year you're then considering was knowing and
11    willful, as previously defined.
12         The first of the elements of these counts the law
13    requires is that a married individual filing separately who was
14    less than 65 years old who had, during the relevant tax years
15    1999, 2000, 2001, and 2002, a gross income respectively of
16    $2,750, $2,800, $2,900, or $3,000 respectively, or more, was
17    required to make and file an income tax return regardless of
18    whether a tax was due for that year.  Therefore, in order for
19    the government to satisfy this first element, it must establish
20    beyond a reasonable doubt that the defendant's gross income for
21    the referenced calendar year exceeded those particular amounts.
22         With respect to the second element, you're instructed
23    that the taxpayer required by law to make an income tax return
24    must file his tax return on or before April 15 of the year
25    following the taxable year at issue unless he obtains an

74ijoset        C H A R G E

1    extension to file.  And in this case, the defendant obtained

2    extensions for the years 1999 and 2000 -- through 2001, as

3    noted below.  Therefore, in order to satisfy this second

4    element, the government must convince you beyond a reasonable

5    doubt that he failed to file his 1999, 2000, 2001 and 2002

6    income tax returns on or before October 15th, 2000 for the 1999

7    tax year; August 15th, 2001 for the 2000 tax year; October

8    15th, 2002 for the 2001 tax year; and April 15th, 2003 for the

9    2002 tax year.

10           I instruct you that the fact that a defendant is under

11   civil or criminal investigation by the IRS or some other agency

12   does not relieve him or her of the duty to file a tax return.

13   Neither the Constitution nor any other law excuses such a

14   failure to file a timely income tax return.  You're instructed

15   that the statute requires the filing of a timely return, and a

16   tax return filed months or years late does not constitute a

17   timely filing.

18           The third element of willfulness has previously been

19   instructed and applies to these counts.

20           A defendant does not act willfully with respect to

21   these counts if he believes in good faith that his actions

22   comply with the law.  Therefore, if the defendant actually

23   believed, incorrectly, that what he was doing was in accord

24   with the tax statutes and that he was not required to file a

25   tax return because he was under investigation, he cannot be

74ijoset        · C H A R G E

1  said to have had the specific criminal intent willfully to fail

2  to file.  Thus, if you find that he honestly believed at the

3  time the returns were due to be filed that he was not required

4  to file a return because he was under investigation by the IRS,

5  even if that belief was unreasonable or irrational, you should

6  find him not guilty of failure to file.  However, you may

7  consider whether the defendant's belief was actually held in

8  good faith.  You may consider whether his belief was reasonable

9  as a factor in deciding whether he, in fact, held that belief

10  in good faith.

11        A person is not guilty of these crimes unless he acted

12  willfully, as previously defined.

13        Counts Eleven through Fifteen of the indictment

14  charges the defendant with failure to pay tax for the years

15  1999 through 2003 respectively.  Each year is a separate count.

16  The indictment in this regard reads as follows:

17        On or about the dates set forth below, in the Southern

18  District of New York, Richard Josephberg, the defendant,

19  unlawfully, willfully and knowingly did fail to pay, at the

20  time and times required by law and regulation, income tax due

21  for the calendar years stated below in the amounts set forth

22  below to the District Director of the Internal Revenue Service

23  for the Internal Revenue District of Manhattan or to the

24  Director of Internal Revenue Service Center, Holtsville, New

25  York, or to any other proper officer of the United States,

74ijoset        C H A R G E

1    whereas Richard Josephberg, the defendant, then and there well
2    knew and believed he had a taxable income in excess of $100,000
3    for each of said years on which taxable income there was due
4    and owing to the United States of America an income tax in the
5    amounts set forth below, which income tax he was required to
6    pay at the times required by law and regulation to the District
7    Director of the Internal Revenue Service, to said Director of
8    the Internal Revenue Service Center, or to said proper
9    officers.

10          And that concludes a reading of the main part of those
11   counts.

12          And these counts charge the defendant with violating
13   Section 7203 of Title 26 of the Code, which requires as
14   follows:

15          "Any person required by this title to pay any tax who
16   willfully fails to pay such tax at the time or times required
17   by law and regulation shall be guilty of a crime."

18          That concludes the reading of that statute.

19          The elements for this charge are:

20          First, that he was required to pay tax for the tax
21   year in issue; second, that he failed to pay the tax at the
22   time due for the tax year in issue, the particular count you're
23   then considering; and the third element is that his failure to
24   pay the tax due for the tax year in issue was knowing and
25   willful; in other words, that the defendant failed to pay the

74ijoset          C H A R G E

1   tax with the purpose of violating his duty under the tax laws

2   and not as a result of accident, negligence or some other

3   innocent reason.

4           You're instructed, as to the first element, that an

5   individual taxpayer who is required by law to file a tax return

6   is required, without assessment or notice or demand from the

7   IRS, to pay the appropriate tax due to the IRS at the time

8   fixed for filing the return.

9           The government does not have to prove as to this count

10  the exact amount of the tax that the defendant was required to

11  pay nor the exact amount as mentioned in the indictment.

12          With regard to Counts Eleven through Fifteen, the

13  government contends that the amount of tax owed by

14  Mr. Josephberg for each of those years at issue is the tax set

15  forth on the returns themselves which he filed for those years,

16  but did not pay.

17          With respect to the second element of the offense, the

18  government must prove beyond a reasonable doubt that he failed

19  to pay the tax due for the year in question and that he did so

20  as charged knowingly and willfully and not by mistake or some

21  kind of negligence or some other innocent reason.  And the

22  dates for payment are as stated before, the same as the dates

23  for filing for those particular counts.

24          The third element is that he acted knowingly and

25  willfully as previously defined for you in connection with the

74ijoset        C H A R G E

1   other counts.

2           Intent to pay in the future the taxes that are due at

3   a current time does not constitute a defense to these counts.

4   It is not necessary that the government prove an intent to

5   evade the payment of any taxes.  The defendant's knowing intent

6   of avoiding the legal duty that he pay constitutes the crime

7   charged.

8           Financial ability is not a defense to criminal

9   liability for willfully failing to pay the tax returns.  Every

10  citizen has an obligation to pay his income tax and is

11  obligated to conduct his financial affairs in such a way as to

12  have the funds available to do so.

13          Count Sixteen -- and we are getting near the end --

14  charges that he, Mr. Josephberg, between January 1996 and July

15  2004, knowingly, intentionally and corruptly obstructed and

16  impeded and endeavored to obstruct and impede the due

17  administration of the Internal Revenue laws.

18          This count arises under Section 7212(a) of Title 26,

19  which reads in relevant part:

20          "Whoever corruptly obstructs or impedes or endeavors

21  to obstruct or impede the due administration of this title,"

22  which is the tax title, "shall be guilty of a crime."

23          That concludes a reading of the statute.

24          The elements of this count are, first, that the

25  defendant in any way corruptly endeavored to obstruct or impede

2358

74ijoset        C H A R G E

1   the due administration of the Internal Revenue Code.  That's to

2   be regarded as three separate elements.  That he endeavored,

3   that he obstructed or attempted to obstruct.

4        Corruptly means to act with the intent of securing an

5   unlawful advantage or benefit either for one's self or another.

6        The term endeavored, as used in these instructions,

7   means knowingly and deliberately to act or make an effort which

8   has a reasonable tendency to bring about the desired result.

9        It's not necessary to prove that the endeavor was

10  successful or achieved the desired result.  And factual

11  impossibility in succeeding is not a defense.  Even if the

12  government failed to prove that there was an underlying tax

13  obligation during that period of time, the defendant can still

14  be found guilty of corruptly endeavoring to obstruct the due

15  administration of the Internal Revenue Act if the defendant

16  believed that there was such an underlying tax obligation and

17  corruptly endeavored to impede and impair the IRS efforts to

18  try to collect that liability.

19        To obstruct or impede is to hinder or prevent from

20  progress, check, stop or also retard the progress or make the

21  accomplishment difficult and slow.

22        The due administration of the Internal Revenue laws

23  include the IRS efforts to collect, assess and determine the

24  tax liabilities of individuals and companies.  I, therefore,

25  instruct you that the tax liabilities at issue need not be

74ijoset        C H A R G E

1 || those of the defendant alone.

2 ||        Now I turn to the last charge, which is Count
3 || Seventeen of the indictment, and that charges the violation by
4 || Mr. Josephberg of Title 18, United States Code, Section 1347,
5 || the Federal Healthcare Fraud statute.  And that statute
6 || provides, in relevant part:

7 ||        "Whoever knowingly and willfully executes or attempts
8 || to execute a scheme or artifice to defraud any healthcare
9 || benefit program or to obtain by means of false or fraudulent
10 || pretenses, representations or promises any of the money or
11 || property owned by or under the custody or control of any
12 || healthcare benefit program in connection with the delivery of
13 || or payment for healthcare benefits, items or services shall be
14 || guilty of a crime."

15 ||        That concludes a reading of that statute.

16 ||        In this count, the defendant is charged with engaging
17 || in a scheme or artifice to defraud Oxford Health Plan and a
18 || scheme to obtain funds from that program by false and
19 || fraudulent pretenses; that is to say falsely representing that
20 || his wife was a salaried employee of J.G. & Company in order to
21 || obtain healthcare insurance under a business healthcare plan.

22 ||        The count reads as follows:

23 ||        "Between on or about 1997 and 2002, in the Southern
24 || District of New York and elsewhere, Richard Josephberg, the
25 || defendant, unlawfully, willfully and knowingly did execute and

74ijoset          C H A R G E

1    attempt to execute a scheme and artifice to defraud a
2    healthcare benefit program, to wit, Oxford Health Plans, and to
3    obtain by means of false and fraudulent pretenses,
4    representations and promises money and property owned by and
5    under the custody and control of OHP in connection with the
6    delivery of payment for healthcare benefits, items and
7    services, to wit, Richard Josephberg falsely represented to OHP
8    that his wife was an employee of J.G. & Company in order to
9    obtain health insurance coverage under a business healthcare
10   plan offered by OHP.

11        Although the indictment charges the defendant with a
12   scheme or artifice to defraud and a scheme or artifice for
13   attempting to obtain money by means of false or fraudulent
14   pretenses, representations and promises, the government must
15   prove beyond a reasonable doubt that the defendant did at least
16   one of these.  It doesn't have to prove both, so long as you
17   are unanimous as to which of the purposes, either the scheme or
18   artifice to defraud the healthcare benefit program or to obtain
19   money from the program.  But you would have to be unanimous on
20   at least one of them in order to convict.

21        In order to sustain a charge of healthcare fraud, the
22   government must prove the following elements beyond a
23   reasonable doubt:

24        First, that at or about the time alleged in the
25   indictment, there was either a scheme or artifice to defraud

74ijoset         C H A R G E

1    the program or to obtain money by false and fraudulent

2    pretenses, representations or promises from the custody of the

3    program;

4            Second, that the defendant knowingly and willfully

5    devised or participated in the scheme or artifice to obtain

6    money and property based on fraudulent and false pretenses,

7    representations, or promises with knowledge of the fraudulent

8    nature and with specific intent to defraud; and,

9            Third, that the scheme was conducted in connection

10   with the delivery of or payment for healthcare benefits, items

11   or services.

12           I instruct you as a matter of law that private

13   healthcare insurers like Oxford are healthcare benefit programs

14   within the meaning of that statute which was just read to you a

15   minute ago in connection with Count Seventeen.

16           The government has the burden to establish the

17   existence of a scheme or artifice to defraud.

18           A scheme or artifice is simply a plan for the

19   accomplishment of an object.

20           Fraud is a general term which embraces all ingenuous

21   efforts and means that individuals devise to take advantage of

22   others.   The advantage sought must involve money, property or

23   other things of value.

24           A scheme or to defraud is merely a plan to obtain

25   something of value by trick, deceit, deception or falsehood.

74ijoset          C H A R G E

1    You may find the existence of such a scheme if you find that

2    the defendant conducted himself in a manner which departed from

3    traditional concepts of fundamental honesty and fair play in

4    the general business life of society.

5              Apart from proving a scheme or artifice to defraud,

6    the government can satisfy the first element of the healthcare

7    fraud statute alternatively by proving the existence of a

8    scheme or artifice to obtain money or property by means of

9    false or fraudulent pretenses, representations or promises.

10             The definition of the word scheme is the same as in

11   the other half of the charge.

12             Fraudulent is a general term which includes all

13   possible means by which a person seeks to obtain some unfair

14   advantage over another person by intentional

15   misrepresentations, false suggestions or concealment of the

16   truth.  That unfair advantage must involve money, property or

17   other things of value, such as health insurance coverage or

18   benefits.

19             A pretense, representation or statement or document is

20   fraudulent if it was made falsely and with intent to deceive.

21             A representation, statement, claim or document may

22   also be fraudulent if it contains half truths or if it conceals

23   a material fact in a manner which makes what is said or

24   represented deliberately misleading or deceptive.

25             Deceptive need not be premised on the spoken or

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

74ijoset          C H A R G E

1    written words alone.  The arrangement of the words or the

2    circumstances in which they're used may convey the false and

3    deceptive appearance.

4           It's not necessary for the government to establish

5    that any particular person actually relied on or suffered any

6    damages as a consequence of the fraudulent representation or

7    concealment of the facts, nor need you find that the defendant

8    profited from the fraud.  It's enough if you find that the

9    false statement or a statement omitting material facts made

10   what was said deliberately misleading and was made as part of a

11   fraudulent scheme in the expectation that it would be relied

12   on.

13          You must concentrate on whether there was such a

14   scheme, not the consequences of the scheme.  Proof concerning

15   the accomplishment of the goals of the scheme may be persuasive

16   evidence of the existence of a scheme.

17          In addition, the falsehood or fraudulent

18   representation or failure to disclose must relate to a material

19   fact or matter.

20          As I defined earlier, a material fact is one which

21   would reasonably be expected to be of concern to a reasonable

22   and prudent person in relying upon the representation or

23   statement or failure to disclose in making a decision.  This

24   means if you find a particular statement was false or it

25   concealed facts that made what was said deliberately

74ijoset       C H A R G E

1   misleading, you must then determine whether that statement was

2   one that a reasonable person operating a health benefit plan

3   would have considered important in making his or her decision.

4           The government is not required to establish the scheme

5   actually succeeded or that anyone actually realized any gain

6   from it or that anyone suffered a loss.  The question for you

7   to decide is did the defendant knowingly devise or participate

8   in a scheme to defraud a healthcare provider or a scheme to

9   obtain money or property from a healthcare provider by false or

10  fraudulent pretenses, representations or promises.  The scheme

11  need not be shown by direct evidence, but may be established by

12  all the evidence in the case.  And, here, the government

13  alleges that the scheme was based on submitting documents to

14  the health insurance company.

15          Specifically, the indictment alleges that the

16  documents submitted to Oxford Health Plans falsely depicted

17  Arlene Josephberg as a full-time salaried employee of

18  Josephberg, Grosz & Company, working more than 20 hours per

19  week.  And it is alleged that this conduct was intended to

20  deceive Oxford into providing health insurance coverage for the

21  employees of that firm under a group policy that would have

22  been unavailable to Josephberg, Grosz & Company if Oxford had

23  known the full truth about Arlene Josephberg's status and the

24  actual number of full-time or salaried employees that

25  Josephberg, Grosz had during the relevant period.  And it is

74ijoset        C H A R G E

1   alleged that this was accomplished by submitting a Schedule C

2   to a tax return and New York State form prepared by Fox which

3   it is alleged the defendant knew to be false and fraudulent as

4   to a material matter.

5         Here again, it must be shown that the defendant's

6   participation was knowing and willful, as previously defined.

7         The words devised and participated don't need any

8   definition.  Devise a scheme is to plan it or invent it or

9   figure it out.  And to participate means to associate one's

10  self with a scheme with an intent of making it succeed.

11        It's not necessary to show the defendant originated

12  the scheme.  The defendant acts with intent to defraud if he

13  engages or participates in a scheme to obtain money by false

14  and fraudulent pretenses, representations or promises with

15  knowledge of the scheme's fraudulent or deceptive character and

16  with the intent to be involved in it and help it succeed.

17        The government need not prove the intended victim was

18  actually harmed or that the Oxford lost any money as a result.

19        If you determine that the defendant committed a fraud,

20  it's no defense that he was or believed he was entitled to the

21  benefits that were sought through the fraudulent scheme.  The

22  government need only establish that the defendant participated

23  in a deceptive scheme intended to deprive an insurance company

24  of material information or to obtain money by false and

25  fraudulent pretenses and, thus, keep the insurance company from

74ijoset        C H A R G E

1    determining for itself whether it was appropriate to provide
2    coverage for Josephberg, Grosz & Company at a certain premium.
3    And it's no defense that he might have been entitled to
4    coverage at or a different rate if he had sought coverage
5    through truthful representations.
6            The third element that must be shown is that it was in
7    connection with healthcare benefits.  If the scheme involved
8    insurance coverage for healthcare services, that element will
9    be satisfied.
10           As I think I indicated to you earlier, the fact that
11   the indictment alleges certain acts occurred on or about
12   specific dates doesn't matter if the evidence shows that the
13   particular act occurred on a different date if there is a
14   substantial similarity between the alleged date and the actual
15   date.  And the same is true with respect to dollar amounts
16   mentioned in the indictment.  The law only requires a
17   substantial similarity between the indictment and the proof.
18   If a different amount was determined, if it's not material,
19   it's not significant.
20           There's no obligation on the government to call any
21   witnesses whom you would regard as cumulative to those who
22   already testified.  And you should not draw any inference or
23   any conclusions as to what an uncalled witness would have
24   testified had that witness been called because, although a
25   defendant doesn't have to prove his innocence, both the

74ijoset        C H A R G E

1   government and the defendant have the right to subpoena

2   witnesses.  So uncalled witnesses should not be an issue.  You

3   decide the case on the evidence that's before you, or the lack

4   of evidence, and don't speculate as to what some other person

5   who might have been called would have said.

6          I want to make it clear that each of these counts

7   involves the issue of whether the defendant acted intentionally

8   and willfully.

9          Specifically, with respect to whether the household

10  employee was an independent contractor or an employee, if the

11  evidence shows that the defendant acted in a good-faith belief

12  that she was, in fact, an independent contractor and that he

13  treated her as such, he would not be found to have acted

14  knowingly and willfully on the issue.  Whether he, in fact,

15  held such a good-faith belief is an issue to be determined by

16  you, and you can consider all the evidence in the case as

17  bearing on that.  And if you find that such a belief was

18  unreasonable, that may be a matter for your consideration in

19  determining whether the belief was actually held.  But if he

20  was acting in good faith, even if the belief was irrational or

21  unreasonable, he would not be acting knowingly and willfully

22  and, therefore, could not be convicted of that particular item.

23         Now, I guess it goes without saying that it's your

24  duty to try and decide this case fairly and impartially.  And

25  each of you, that means each of you, during your deliberations

74ijoset        C H A R G E

1   is entitled to your own views and opinions.  That's what

2   deliberation is all about.  Listen to the other jurors and give

3   your own opinions and speak with each other open-mindedly and

4   politely, in a friendly fashion, but listen to one another,

5   reason it out, and discuss the evidence and take your time.

6         The verdict, when you reach it, represents the

7   decision of each juror for himself or herself, and if any one

8   of you has a point of view which doesn't agree with the rest,

9   you're not to give it up simply because you're outnumbered or

10  out-talked by the other jurors.  The verdict must be unanimous,

11  but nobody has to give up his or her opinion to make it so.

12        If, after discussion, on the other hand, you find that

13  the views of the other jurors appeal to you as being more

14  likely to be correct than your own opinion -- in other words,

15  if they really convince you -- you shouldn't hesitate to change

16  your mind and agree with the others if you do, in fact, agree.

17        But the verdict has to be unanimous as to each count.

18  Each of you is to apply your conscientious efforts to

19  deliberate with each other to reach a unanimous decision, but

20  there's no compromising, there's no shortcut.  The jury

21  verdict, once reached, represents the decision and verdict of

22  everybody on the jury.

23        You will have in the jury room all of the exhibits

24  which have been received in evidence in the case.  And you will

25  also have in the jury room with you a copy of the indictment,

74ijoset          C H A R G E

1    which, as I said earlier, is not evidence.  It's merely a

2    designation of what the charge is.  You will also be provided

3    with a sheet of paper, which is a document -- you can refer to

4    it as a ballot.  It's a listing of the charges by number to

5    assist you in setting forth your verdict when reached.

6          We also will be sending in a tape recorder of the jury

7    instructions which I've been giving this morning and a machine

8    to play it.  Whether you use that or not is solely for your own

9    benefit and it's up to you.

10         If you find there's something unclear about the

11   Court's legal instructions as to any particular count, send out

12   a note and ask to have it explained further.  And I'll consult

13   with the attorneys about the note, and, after doing that, I'll

14   invite you out here to open court again and attempt, to the

15   best of my ability, to answer the note if you have any problem

16   with the legal instructions.

17         Similarly, you're entitled, under the law, to have

18   evidence, testimony, read back to you by the court reporter.

19   That's a lengthy process, so please don't request readbacks

20   without specifying clearly what you want read and without first

21   discussing it among each other, because the collective memory

22   of 12 people is better than that of any one or two jurors.  But

23   after discussion, if you want a read-back, that's your absolute

24   right, and just send out as clear a note as you can, and I'll

25   bring everybody together, and the court reporter will read to

74ijoset        C H A R G E

1    you whatever portions of the trial testimony you may want to

2    have read.

3          The jury should select a foreperson.  You can do that

4    by majority vote.  That's the only decision you can really make

5    by majority vote, except what time you want to start tomorrow,

6    and that could be done by majority vote.  All other things have

7    to be unanimous.

8          The function of the foreperson is simply to preside

9    over the deliberations of the jury, sort of like a chairperson,

10   so that everybody doesn't talk at once, and to announce the

11   verdict when reached.  But his or her opinion as to how the

12   case should be decided has no greater validity than any other

13   juror.

14         When you select a jury foreperson, he or she should

15   take that first chair.  That chair is reserved for the

16   foreperson.  The rest of you could all move over.

17         When the jury's reached a verdict, you will tell the

18   security officer who will be outside your door that the jury

19   has reached a verdict or you can send out a note saying the

20   jury has reached a verdict and we'll convene everybody

21   together.  The clerk will ask the foreperson whether the jury

22   has reached a verdict.  If he or she says yes, we have, then

23   the clerk will go down through each count and ask the

24   foreperson how the jury finds.  The foreperson can use the

25   ballot to read from.  And after the verdict has been announced,

74ijoset       C H A R G E

1    the clerk will ask each juror separately whether the verdict as
2    announced is the verdict, the unanimous verdict, of the jury.
3           The verdict on each count will be either not guilty or
4    guilty.
5           At this point, I'm going to ask you to remain seated
6    where you are and I'm going to speak with the attorneys,
7    because it's possible that they might want me to give some
8    additional information.  It's even possible they might want me
9    to correct a mistake I might have made.  So please just stay
10   there and keep an open mind for just a couple of minutes more.
11          (At the sidebar)
12          THE COURT:  Does the government have anything?
13          MR. OKULA:  Just one brief thing, your Honor.
14          Your Honor had indicated during the charge
15   conference -- and I'm at page 2054 of the transcript -- that
16   you would charge that a few thousand dollars of evaded tax may,
17   in a particular case, be considered substantial.  You indicated
18   that.
19          THE COURT:  I thought I said that.
20          MR. SCHARF:  I thought so, too.
21          THE COURT:  I don't think I said a few thousand.  I
22   think I said it was up to them.
23          MR. OKULA:  Right.  But I think, during the jury
24   charge, you said that you would give that.  And that had been
25   given in the sample charges of Judge McMahon and Judge Preska

74ijoset        C H A R G E

1    that we had.

2            THE COURT:  All right.  Either write it out or get it

3    for me.

4            Anything else?

5            MR. OKULA:  That's it, your Honor.

6            THE COURT:  All right, sir.

7            MR. SCHARF:  Your Honor, we have quite few, and I

8    would request that we be given an opportunity to confer among

9    us to get our list together and that the jury be excused so we

10   can say it more easily out loud rather than whispering here.

11           THE COURT:  Well, you're entitled to do that if that's

12   what you want.  I can't assure you that that's a good idea or

13   not.

14           MR. SCHARF:  Well, I would appreciate it nevertheless.

15           (In open court; jury present)

16           THE COURT:  There are several matters which the

17   attorneys wish to discuss.  It's going to take little bit of

18   time.  And, accordingly, I would like all of you take a recess

19   because there might be some additional things which have to be

20   discussed to make my instructions complete.  And since you

21   haven't heard them all yet, I want you to continue to keep an

22   open mind.  So please, all of you, including Mr. Vasquez, the

23   alternate, please go in there.  And don't discuss the case.

24           If you want to elect your foreperson, you can do that.

25   However, Mr. Vasquez, you can't vote on it.  Okay?

74ijoset        C H A R G E

1          THE DEPUTY CLERK:  I will get the lunch order.

2          THE COURT:  Yes, get the lunch order.  That's a good

3   idea.

4          (In open court; jury not present)

5          THE COURT:  All right, anyone not actually speaking

6   can be seated.

7          Are you ready to go?

8          MR. SCHARF:  Yes, your Honor.

9          Your Honor, first, we have several exceptions, or

10   objections, and several requests for further instructions.

11   Just for the record, let me state the ones first that are for

12   further reference.

13          We respectfully request instructions concerning

14   depreciation, as we submitted previously in writing.  All of

15   these were submitted previously in writing.

16          We request an instruction regarding TEFRA, also

17   submitted April 2nd.

18          We request an instruction on -- although there was

19   ample instructions concerning the burden of proof, which we

20   appreciate, we request the converse instruction on the burden

21   of proof in civil cases, as that was an issue.  That came into

22   the evidence here since the government is relying on tax court

23   judgments, where the burden of proof is different.

24          We also requested in writing, and we renew that

25   request at this time, for an instruction on the definition of

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914) 390-4103

74ijoset      C H A R G E

1    quick assessments or the lack of a definition thereof.

2              In addition, we requested on April 2nd, and renew at

3    this time, a request for an instruction on the statute of

4    limitations for assessments of additional taxes, the three-year

5    statute of limitations, which is the general rule.

6              We also requested, and renew our request at this time,

7    an instruction concerning consents to extend the period of

8    limitations for assessing additional taxes.

9              We also request -- and this has special meaning

10   because your Honor gave the government version, but --

11   concerning no obligation to call certain witnesses if they're

12   cumulative.  But in view of the cumulative instruction, which

13   is correct in law, we request the additional missing witness

14   instruction pertaining to situations where one party has unique

15   control over a person.  And, of course, I'm referring

16   specifically to Revenue agents.  And at the same time, we're

17   requesting a missing evidence instruction, based on

18   Arizona v. Youngblood, regarding the fact that some evidence

19   was shipped off to the Brookhaven Service Center or to other

20   places.  We request a standard instruction that we've submitted

21   in writing regarding inferences that may be drawn from both

22   missing witnesses uniquely under the control of one party and

23   from missing evidence that is uniquely under the control of one

24   party.

25              So that's the renewal of our written requests of April

74ijoset       C H A R G E

1 | 2nd.

2 |         In addition, based on what we've heard already, I
3 | don't know how substantial this first one is, but there was
4 | several times when the Court read the year incorrectly.  Maybe
5 | the jury could be instructed that if the year was read
6 | incorrectly, such as I believe, in one instance, your Honor
7 | said 1990 to 1985 or something like that.

8 |         THE COURT:  I certainly don't recall doing that.

9 |         MR. SCHARF:  Well, at one point your Honor I believe
10 | said 1988 when you meant to say 1980.  I don't think it's a big
11 | deal, but the jury should be instructed that if it's obvious
12 | that the year was read incorrectly, they should consider the
13 | year in the indictment.

14 |         The first substantial request we have, or objection,
15 | is the instruction regarding anticipatory assignments of
16 | income.  While that does accurately state the law, we believe
17 | that the Court should add the defendant's theory, which is that
18 | it's not income if it has no value.  Similarly for assets.  We
19 | agree that anticipatory assignments of income are not valid
20 | under tax law, but they must pertain to what is actually
21 | income, and income is something inherently valuable.  So if the
22 | jury finds that there's no value, there's no violation of the
23 | assignment of income principle.

24 |         Number two regarding the instructions concerning
25 | employee versus independent contractor, we do appreciate that

74ijoset          C H A R G E

1    the Court read the 20 factors; however, we would request,

2    respectfully, that the Court add to that that there's no

3    weighted average and there's no guidance on how to weigh those

4    factors.

5              THE COURT:  That's in there.  That was actually read.

6              MR. SCHARF:  Okay.  Then I apologize.

7              Also, we request that the statutory nonemployee

8    instruction be read to the jury, since there is evidence under

9    IRS publications that a statutory employee -- a statutory

10   nonemployee, I should have said, is someone who takes care of

11   children or elderly or infirmed people.  We believe that there

12   is evidence that that applies to Ms. Grant's care for Jessica

13   in 1997 and 1998 and it fits within the Publication 15(a), as

14   described during the evidence.  Or even, if the Court will not

15   instruct the jury that that is the law, at least we would

16   request that the Court instruct the jury that the defendant is

17   entitled to rely on that reasonably as part of the willfulness

18   requirement.

19             Next, regarding the failure to file instructions

20   concerning the willfulness element, I believe your Honor

21   instructed the jury that it may consider whether his belief was

22   reasonable.  Reasonableness implies --

23             THE COURT:  I think I said whether he believed it in

24   good faith.

25             MR. SCHARF:  Okay.  That, to me -- I could be wrong on

74ijoset      C H A R G E

1    this one, but my recollection of the U.S. Supreme Court

2    decision in United States v. Cheek is that there is no

3    requirement of objective reasonableness.

4              THE COURT:  I agree with that, but I don't think I

5    told them that.

6              MR. SCHARF:  Okay.  If good-faith reasonableness does

7    not imply objectivity, then we have no objection.

8              THE COURT:  What the proper instruction was intended

9    to be is if he had good faith, he was acting in good faith, he

10   couldn't be found to be acting willfully.  However, in

11   determining whether he acted in good faith, the reasonableness

12   of his beliefs can be considered as evidence bearing on whether

13   he really did subjectively have good faith.  I'm sure that's

14   the thrust of the instruction given.  That was the intention,

15   anyway.

16             MR. SCHARF:  I don't recall your Honor having said

17   subjective good faith.

18             THE COURT:  I did not because I felt that would be

19   confusing, but I think that's what it gets to.

20             MR. SCHARF:  I don't know that -- I could be wrong,

21   but it's my belief that good faith, reasonable good faith, is

22   inconsistent with subjective good faith, and we would request

23   that the subjective good faith --

24             THE COURT:  The jury may find, if it's unreasonable,

25   that it was not, in fact, held in good faith, because they

74ijoset        C H A R G E

1   can't look into his head and see what he was thinking, but they

2   can infer his intentions and knowledge from all of the

3   evidence.  So if someone has -- I don't mean to be facetious,

4   but if someone has the opinion that Allah told him not to file,

5   if he really believed that, he can't be convicted.  On the

6   other hand, they can consider the unreasonableness of it in

7   determining whether he really believed it.

8           MR. SCHARF:  Well, in any event, we would just request

9   that the instruction be reread including the words subjectively

10  reasonable good faith, which would include the word of Allah or

11  Bhuda or whomever.

12          THE COURT:  Have you concluded?

13          MR. SCHARF:  On that.

14          THE COURT:  Why don't you finish and I'll hear the

15  government.

16          MR. SCHARF:  Thank you.

17          Regarding the presumptions that attend to the

18  transcripts of account, or I believe your Honor called them the

19  assessments, we don't believe that the defense theory of the

20  case was articulated.  The government's theory was.  Your Honor

21  read the proposed instructions last Thursday, I believe, and

22  used the words that the assessments may be considered prima

23  facie evidence.  Today I don't think it came out as may be.

24  That's two words, not one.  I think it came out as the

25  assessments are prima facie evidence as opposed to may be.

74ijoset       C H A R G E

1        THE COURT:  What the Court said was that you are
2   instructed that assessments by the IRS constitute prima facie
3   or sufficient evidence of the asserted tax deficiency.  You
4   may, however, consider whether there is evidence from which it
5   can be concluded that the IRS improperly or incorrectly
6   assessed the taxes in determining whether he owed additional
7   taxes.  You must consider all the evidence in the case and
8   decide whether the government has proved beyond a reasonable
9   doubt if Mr. Josephberg owed substantial additional income tax
10  for the tax year you're considering.  The government doesn't
11  have to prove the precise amount owed so long as it is
12  substantial for a count in the indictment you are then
13  considering.

14       I really think that that's a correct statement and
15  what we discussed at the charge conference.

16       MR. SCHARF:  Well, our only problem with that is the
17  one word, constitute.  As read, the assessments constitute
18  prima facie evidence, whereas we had believed from Thursday,
19  and we believe it's a correct statement of the law, that the
20  assessments may be prima facie evidence, may constitute.

21       THE COURT:  Well, all right.  I understand your
22  position.

23       MR. SCHARF:  In addition, on the healthcare fraud, we
24  have several.

25       Before I get to that, I left out that we had requested

74ijoset        C H A R G E

1   in writing an instruction on valuation pertaining to restricted
2   securities.  We would renew that request at this time.
3              THE COURT:  That I believe I declined because that I
4   believed to be set forth in the Code of Regulations.  It may be
5   a dumb regulation, but I think that's what they said.
6              MR. SCHARF:  Well, if your Honor is referring to
7   Internal Revenue Code Section 83 --
8              THE COURT:  I'm referring to this nonsense that a
9   restriction that expires sometime in the future is not to be
10  considered in reaching a value for tax purposes.  And I think
11  that they can do that.
12             MR. SCHARF:  Well, that's valuation for purposes of
13  determining a tax.  That's not true economic valuation, which
14  is the issue here.  And we believe that Section 83 definition
15  is totally inapplicable to the facts here, where we're
16  discussing economic value.  If it had no economic value, then
17  it's not an income item or an asset regardless of how the
18  Internal Revenue Code requires that it be reported for tax
19  purposes.  So we request that valuation instruction that we
20  submitted in writing on April 2nd.  I think it was April 2nd.
21  That's when it's dated.  Maybe we submitted it a few days
22  later.
23             THE COURT:  Whatever day it was.  I don't think I
24  agreed to read that.
25             Are you finished?

74ijoset      C H A R G E

1          MR. SCHARF:  No, your Honor.  I have more regarding

2    the healthcare fraud count.

3          Your Honor stated -- when paraphrasing the Count

4    Seventeen, your Honor paraphrased that the count charges that

5    Richard Josephberg falsely represented that his wife was a

6    salaried employee.  The count does not charge that he falsely

7    represented she was a salaried employee.  It only charges that

8    he falsely represented that she was an employee.  We would

9    request that that be reread without the word salaried and that

10   the jury be told that salaried is not part of the charge.

11         THE COURT:  If that's not part of the charge, then

12   that count ought to be dismissed.

13         MR. SCHARF:  Well, that was our Rule 29 argument.

14         In addition, your Honor charged the jury correctly as

15   to both legs or both alternative positions concerning a

16   conviction for healthcare fraud, but not that they both

17   intersect and that the jury must require, under either leg of

18   the count, that Richard Josephberg falsely represented that his

19   wife is an employee.

20         THE COURT:  I think that's clear.  I think that's

21   clear from the substance of the instruction.

22         MR. SCHARF:  Okay.  Well, then I withdraw that one.

23         Next, your Honor stated that, in defining money or

24   property, your Honor said such as healthcare coverage, and I

25   don't believe that that's consistent with the law or perhaps

74ijoset        C H A R G E

1    there is no law on that issue, that healthcare coverage could
2    be considered property such as --
3            THE COURT:  It certainly shows an action, doesn't it?
4    If they don't pay it, you can sue.  That's property.  It shows
5    an action is property.
6            MR. SCHARF:  Okay.  Then I'll move on, but we would
7    make that request, nevertheless.
8            THE COURT:  Well, I'll decline that.  I think that's
9    kind of borderline foolish.  I don't say that disrespectfully.
10   I appreciate your advocacy.
11           MR. SCHARF:  I know that, your Honor.  Thank you.
12           The indictment did not say or did not charge that
13   Arlene Josephberg is required to be a full-time salaried
14   employee.
15           THE COURT:  Twenty hours.  Oh, the indictment didn't
16   charge it?
17           MR. SCHARF:  The indictment didn't charge that she was
18   full-time.  Neither did it charge that she was salaried.  But
19   then, later, your Honor used the words full-time, salaried
20   employee.  I don't think that's part of Count Seventeen.  Not
21   that I don't think.  It isn't, in fact.
22           Your Honor's words, I believe, were that she's a
23   full-time, salaried employee working more than 20 hours a week.
24   The 20 hours is not in the count, the full-time is not in the
25   count, and the salaried is not in the count.  The count

74ijoset        C H A R G E

1    requires that Richard Josephberg falsely represented that she's

2    an employee.   That's all it charges.

3           Also, we believe that that charge concerning Count

4    Seventeen assumed that there was an untruthful statement and

5    thereby presented the government's theory of the charge, or the

6    count, but it did not present the defense theory, which was

7    that there's no basis to prove that Arlene Josephberg did not,

8    in fact, work for Richard Josephberg.

9           THE COURT:   The question was whether she received the

10   twelve grand.

11          MR. SCHARF:   Well, that's not in the count.

12          THE COURT:   I heard you.

13          MR. SCHARF:   Thank you.

14          May I have a moment to confer with co-counsel if I

15   left anything else out?

16          THE COURT:   Yes.

17          (Counsel conferred)

18          MR. SCHARF:   In addition to what I said previously

19   about the 20 hours, I believe the Court stated in the charge

20   conference last week -- no, not in the charge conference, but

21   during the testimony that the 20 hours is not an issue, and

22   now, in this version of the charge, the 20 hours was made an

23   issue.

24          THE COURT:   Well, I think the whole representation is

25   really what's involved in the count, and it has to be treated

74ijoset        C H A R G E

1    as a whole to determine whether it's false.  Of course she

2    worked for the business.  I don't doubt that.  We heard

3    testimony from Oxford that, to be covered, she had to be paid

4    and that she had to do 20 hours average.

5              MR. SCHARF:  I believe the Oxford witness,

6    Mr. Sinclair, said she did not have to be paid.  She has to

7    work the 20 hours, but he did not say she has to be paid.

8              THE COURT:  I may be wrong, but my memory is

9    otherwise.  I thought that the essence of the fraud really was

10   the money, which Fox and the defendant damn well knew they

11   didn't have her on Schedule C.

12             MR. SCHARF:  Well, that --

13             THE COURT:  Let me hear the government's response to

14   that when you have covered everything.

15             MR. OKULA:  Just with respect to that, your Honor --

16             THE COURT:  Wait, wait, wait.  Wait until he's

17   finished.

18             MR. OKULA:  Oh, I'm sorry.

19             MR. SCHARF:  I believe I'm finished, subject to

20   conferring with co-counsel.

21             THE COURT:  Please go confer with co-counsel.

22             (Counsel conferred)

23             MR. SCHARF:  Finally, your Honor, we believe that the

24   constant repetition to the jury of the requirement that there

25   must be unanimity implies that they must come to a verdict as

74ijoset        C H A R G E

1   to each count, whereas, in reality, if they're not unanimous,

2   they do not have to return a verdict.  I think that should be

3   explained as well.

4           Thank you, your Honor.  That's everything.

5           MR. OKULA:  May I, your Honor?

6           THE COURT:  Yes.  Just give me a moment to organize my

7   notes.

8           MR. OKULA:  Okay.  I'm sorry.

9           (Pause)

10          THE COURT:  Go ahead, Mr. Okula.

11          MR. OKULA:  Thank you, your Honor.

12          Going in reverse order, with respect to the healthcare

13  fraud statute, the indictment, specifically in Count Seventeen,

14  incorporates the allegations of paragraphs 31 to 33, and in

15  paragraph 32, it specifically alleges that Richard Josephberg

16  caused to be sent to Oxford Health Plans a Schedule C together

17  with a New York State Employer Tax Form which falsely and

18  fraudulently reflected that Richard Josephberg's wife was a

19  wage earning employee of Josephberg, Grosz & Company.

20          So your Honor was right that the essence of our proof

21  and our theory with respect to Oxford health is that he sent

22  that false schedule that falsely reflected she was making

23  income.  And Mr. Sinclair said at the very end of his testimony

24  that he equated the requirement, the employee requirement, to

25  somebody being a wage-2 earner of salary as a requirement.

74ijoset        C H A R G E

1           So that's the essence of our theory.  And based on

2    that, I think the Court's charge is balanced and fair and need

3    not be changed.

4           THE COURT:  You're suggesting that the allegations in

5    Seventeen can be deemed amplified by the allegations in Count

6    Two.  Is that what you're saying?

7           MR. OKULA:  Yes.  Exactly right, yes, your Honor.

8           THE COURT:  So there's no issue of notice.

9           MR. OKULA:  That's correct, because they incorporate

10   by reference in the specific allegations in Seventeen those

11   paragraphs in Count Two.

12          With respect to the assessment definition, I think the

13   Court's charge is consistent with Silkman and it's clear.  And

14   the law is clear that the assessments are valid proof of the

15   deficiency.  And then it goes on, as your Honor instructed, to

16   say that the Court -- I mean the jury can consider whether it's

17   been undercut or successfully attacked in some fashion.  So we

18   don't think that needs any clarification.

19          With respect to the companion sitter issue, your

20   Honor, there's no issue of companion sitter here.  The

21   companion sitter issue relates to the relationship between the

22   person who --

23          THE COURT:  Well, I think that was aired fully to the

24   jury.  And I think that the charge fairly presents the defense

25   that he had a good-faith belief that she was an independent

74ijoset       C H A R G E

1    contractor, which, if it were so, he would have filed a 1099.

2    But that doesn't matter.  That only goes to the facts.

3    However, I really want to be sure that we're clear on that.  I

4    don't think the word subjective has to be used.  But I'm

5    waiting to hear what you think.

6             MR. OKULA:  Well, I think your Honor conveyed what

7    Cheek requires; that is that your Honor perfectly, correctly

8    instructed that good faith is an absolute defense, consistent

9    with Cheek, but, in the jury's assessment of whether the

10   defense was held -- or the belief was held in good faith, they

11   can consider the reasonableness of the position in determining

12   whether the good faith was held in -- really in good faith or

13   whether it was a valid assertion of good faith by the

14   defendant.

15            So, based on that, on your Honor's I think very clear

16   and correct instruction, I don't think there's any further

17   amplification needed.  I think, indeed, it's consistent with

18   what the Pattern charges require on that.

19            With respect to the other requests that Mr. Scharf is

20   requesting, I don't think that there's any need or

21   amplification with respect to missing evidence or missing

22   witness or certainly not quick assessments or TEFRA or the

23   burden in civil cases.  Your Honor adequately instructed them.

24   This is a criminal case, and we have to prove our burden beyond

25   a reasonable doubt.  There is no issue that's really in play

74ijoset        C H A R G E

1   with respect to depreciation.  The defense asked a couple of

2   questions about depreciation, but there's no specific alignment

3   between any depreciation from any entity and how that affects

4   Richard Josephberg's tax liabilities or tax deficiencies for

5   the years in question.

6           We do agree, your Honor, though, that some statute of

7   limitations charge should be fashioned and should incorporate,

8   I think, a reference to the fact that there were consents of

9   the statute that were assigned.

10          So, beyond that, we have no other comments.

11          THE COURT:  You're not concerned over the missing

12  witness?

13          MR. OKULA:  No.  I don't think that that should be

14  given at all, your Honor.  I don't think that there is anybody

15  that is uniquely within the control of the government that they

16  couldn't have subpoenaed themselves and brought here.  A

17  missing witness is really with respect to somebody who is

18  uniquely within the control of one party.  They haven't

19  identified who they're talking about here.

20          THE COURT:  Well, they're subject to subpoena, too.

21  If they're IRS agents, they're subject to subpoena.

22          MR. OKULA:  That's correct.  And that's exactly my

23  point.

24          THE COURT:  Well, I think anything much more I could

25  do might inject confusion.

74ijoset        C H A R G E

1              I think I'm going to take a brief recess and allow you

2      to write, Mr. Okula, and to share with Mr. Scharf the

3      additional instruction as to statute of limitations.  I'm

4      seriously considering whether I should read Section 83 of the

5      Code, but I don't know that that would add much.

6              MR. SCHARF:  We're not requesting 83, your Honor.

7              MR. OKULA:  And we don't think that that's necessary,

8      either.

9              THE COURT:  I didn't quite understand the depreciation

10     issue.

11             MR. SCHARF:  Excuse me, your Honor?

12             THE COURT:  Depreciation.

13             MR. SCHARF:  We are requesting depreciation, yes.

14             THE COURT:  What do you mean by that?

15             MR. SCHARF:  I'm referring to the issue that arose

16     during the trial that because -- since the opening statement by

17     the government that because Mr. Josephberg earned this much

18     income and he only paid such few taxes, there must be something

19     wrong.  Mr. Dennehy acknowledged in his testimony that this

20     could be perfectly legal if, in fact, the deductions are

21     correct.  One of the deductions we suggested through several

22     witnesses, including Mr. Dennehy, was the deduction for

23     depreciation.

24             THE COURT:  Of what?

25             MR. SCHARF:  Of partner assets, real estate or other

74ijoset        C H A R G E

1    assets.

2              THE COURT:  As far as I understood it, the

3    partnerships which caused the problem were partnerships which

4    were either straddles or repos, and government securities which

5    are the subject of repos do not depreciate.  And insofar as

6    concerns the straddles, they don't depreciate, either.

7              I am really at a loss to see anything relevant in the

8    issue of depreciation.  I think I'll leave the record as it is

9    on that.

10             But I will give the statute of limitations

11   instruction.  The government has offered to write it out in

12   handwriting.  As clearly as you can.  Share it with your

13   adversary.  See if you can agree as to form without the defense

14   waiving any rights of that exception to the charge.  And we'll

15   resume in about five minutes.

16             MR. OKULA:  Great, your Honor.

17             MR. SCHARF:  Your Honor, as to the missing witness,

18   though, we strenuously disagree that these witnesses are within

19   our control and we could have subpoenaed them.  We don't have

20   the means to find these Revenue agents.  We don't know where

21   they are.  We don't know if they still work for the IRS.

22             THE COURT:  You can have an exception on that.  I

23   think the charge as presently standing is a fair one.  I think

24   it makes clear that he's presumed innocent.  He doesn't have to

25   call any witnesses.  And he has the right to subpoena people.

74ijoset      C H A R G E

1   And they ought to decide the case on the facts, on the evidence

2   or lack of evidence.  And it's a red herring, frankly.

3          MR. SCHARF:  May I make two other points concerning

4   Mr. Okula's statements regarding Count Seventeen?

5          THE COURT:  Yes, certainly.

6          MR. SCHARF:  Although paragraph 32 does refer to the

7   salary, it's not the charging language.  It's just the story of

8   the count.  But the charging language does not refer to the

9   salary or the full-time employment.

10          THE COURT:  I understand that.  And it may be

11   argued -- and it may be a borderline issue, but it may be

12   argued that the totality of the indictment is enough to give

13   notice to the defendant that the salary is the real hocus-pocus

14   of this thing.

15          I don't think you can question that she was an

16   employee.  Of course she did.  She said she did.  And there's

17   no reason to disbelieve her.  But she sure didn't collect

18   $12,000 out of the business for what she did.  And the Schedule

19   C was never filed in the tax return, as was impliedly

20   represented, as a copy of something that had been filed.  Never

21   was.  And she never was paid.  And, indeed, the company or the

22   business certificate or whatever it was that Josephberg, Grosz

23   never took a deduction for her salary, the whole thing is

24   phony.  But if it were not for the salary issue, there's no

25   case on Seventeen.

74ijoset        C H A R G E

1          MR. SCHARF:  Well, but Mr. Sinclair specifically

2     testified Oxford does not care if she gets paid.  That was his

3     testimony.  So how could it be part of the fraud if Oxford

4     doesn't care?

5          THE COURT:  Did he really say that?

6          MR. SCHARF:  The five of us believe that based on our

7     notes.  We didn't --

8          MR. OKULA:  I would like to grab his testimony, your

9     Honor, because I think he said at the very end of his testimony

10    that he equated the concept of employee -- when he was asked --

11    remember the policy said you don't consider 1099 employees

12    independent contractors when you count who is an employee, who

13    isn't an employee.  Implicit in that is the notion that you

14    have W-2 employees.  And I asked him the question did you

15    consider the definition of employee somebody who's a W-2

16    employee, and he said yes.

17         THE COURT:  Well, you wouldn't have a W-2 unless you

18    get paid a salary.

19         MR. OKULA:  Exactly right.

20         MR. SCHARF:  Which he doesn't care about.  He said

21    they don't care.

22         THE COURT:  Well, one of you is wrong.  Maybe my

23    recollection is wrong.

24         Please come back in 10 minutes.  And try to tend to

25    those things in the meantime.  The longer we keep the jury

74ijoset        C H A R G E

1    waiting, the less desirable it is.

2              (Recess)

3              (In open court; jury not present)

4              THE COURT:  The lunch is about to arrive, so I don't

5    want to let this matter remain hanging too long.  So can I get

6    your input on this request, and then we'll go.

7              MR. OKULA:  Yes, your Honor.

8              We have fashioned a request which I think, in a very

9    succinct manner, addresses the issue of the statute of

10   limitations.  It includes the real issue, I think, that the

11   request gets at, which is what the three-year period is and

12   then the applicability of any consents or waivers.  So I think

13   that that covers it.

14             MR. SCHARF:  Our position, your Honor, is that the

15   government's instruction accurately states the law as far as it

16   goes, but it does not go as far as required by the facts of

17   this case, and that our proposed instruction on page 19 that we

18   submitted a week or two ago accurately states the law as

19   applied to the facts of this case, because there could also be

20   an expiration of the statute of limitations after the tax court

21   decision, and the government's only addresses the three years

22   as it runs before the notices of deficiency are issued.  We

23   would, however, concede that the first two lines of our request

24   should be deleted as they pertain --

25             THE COURT:  But don't I understand correctly that you

74ijoset       C H A R G E

1    protested quite vigorously the fact that the tax court judgment

2    was a default judgment?  And in my discussion with the jury, I

3    did not mention the tax court judgment.  I mentioned only the

4    assessments.

5             MR. SCHARF:  Well, I'm not requesting that the tax

6    court judgment be -- well, I am --

7             THE COURT:  I think I'll use this -- I think I'll take

8    out the word even.  It can be indefinitely.  Don't have to

9    characterize it as even indefinitely.

10            MR. SCHARF:  Thank you, your Honor.

11            THE DEPUTY CLERK:  Court Exhibit number 7, your Honor.

12            THE COURT:  Court Exhibit 7 marked for identification.

13            MR. OKULA:  Your Honor, on just one final point with

14   respect to the issue of Mr. Sinclair's testimony.  There was

15   some dispute about what he said.  I'm reading from page 1150 of

16   the transcript.  This is posed by myself to Mr. Sinclair on

17   redirect.

18   "Q.  Do you consider employee, in defining eligible employees,

19   as someone who is a W-2 as opposed to a 1099 employee?"

20            And after an objection was overruled, he answered yes.

21            THE COURT:  W-2 implies salary.

22            MR. SCHARF:  Your Honor, it implies salary, of course,

23   but it's not responsive to our request.  Mr. Sinclair did

24   testify on cross-examination, toward the very end, that Oxford

25   does not care if the person is salaried.

74ijoset        C H A R G E

1           THE COURT:  Would you look and see where that is.

2           MR. SCHARF:  We don't have that volume here.

3           THE COURT:  I understand, but I believe the government

4    does.

5           I think I ought to proceed without waiting further.

6    And I think I'll adhere to that ruling.

7           Please bring in the jury.

8           MR. SCHARF:  Could we borrow the Court's copy of the

9    transcript?

10          Thank you.

11          THE DEPUTY CLERK:  Bring in the jury, your Honor?

12          THE COURT:  Yes.

13          (In open court; jury present)

14          THE COURT:  There are a couple of extra things I want

15   to discuss.

16          I failed to instruct you in connection with my legal

17   instructions with respect to the statute of limitations.  And

18   you're now instructed, in addition to the other matters

19   mentioned earlier by me, that the tax law provides that taxes

20   must be assessed by the IRS within three years of the date of

21   the filing of the taxpayer's tax return or the due date of the

22   tax return, whichever is later.  And a taxpayer may waive the

23   three-year requirement, however, and may agree to extend the

24   period within which the IRS may assess his or her taxes.  The

25   period of extension, or waiver, may be for a particular time

74ijoset       C H A R G E

1    period or indefinitely.

2           That's an additional instruction with respect to the

3    statute of limitations which you will consider, which you

4    should consider.

5           I'm also told by the attorneys that I -- in my attempt

6    to read the matter fast enough and get finished, that I

7    misspoke a couple of times with respect to the years; that I

8    gave the wrong year date inadvertently.  I don't recall doing

9    that, but it certainly wasn't intentional.  But you're

10   instructed that the dates in the indictment are the dates that

11   control, and if I stated a different year in any of my

12   instructions, you're to go by what's in the indictment, not by

13   the year that I may have mentioned.

14          The next thing is I am certain that I did tell you

15   that a verdict on the count had to be unanimous and that nobody

16   should give up his or her principles or views simply to make it

17   so.  I did not expressly tell you that you don't have to come

18   to a verdict on a particular count if you're not unanimous.

19          That ought to be obvious, but in case it's not, you

20   can't agree unless you do, in fact, agree.  And no one is to

21   change his or her views unless you're convinced by the rest of

22   the jurors that they're more likely to be right than you are.

23   And there's no obligation to be unanimous if you're not

24   unanimous.  So if you can't decide a particular count after

25   full and fair discussion among each other, then you go on to

74ijoset        C H A R G E

1    the next count and consider it.

2            There are a couple of other small matters.

3            As you know, you can't smoke in the building.  If

4    anyone has to take a break, to take a smoking break, to go

5    downstairs or outside or the smoking room in the jury section,

6    the rest of you should stop deliberating until that juror

7    returns, because every juror has to be fully participating at

8    all times in the deliberations of the jury.  So if anyone is

9    unavailable, stop.

10           When you come to the point of wanting to quit for the

11   day, which ought to be around 5:00, but that's really up to

12   you -- we can't stay much after 5 for various reasons.  But

13   when you're ready to quit for the day, send out a note saying

14   so.  And put in the note what time you would like to start

15   tomorrow, because you don't need anybody but yourselves to

16   start.  The clerk will come in and take attendance at that time

17   in the morning.  And if a few of you get there early, don't

18   discuss the case until everybody is present and participating,

19   because, here again, every juror has to participate at all

20   times, and no one should be discussing it unless everybody is

21   present.

22           You can now return to enjoy your lunch and commence

23   your deliberations.  We'll be sending in the exhibits and the

24   other materials.

25           And Mr. Vasquez, our alternate juror, would you just

74ijoset        C H A R G E

1    step down here and let the rest of the jurors go in the jury

2    room.

3                Swear the marshal.

4                (Marshal sworn)

5                THE DEPUTY CLERK:  Please state your name for the

6    record.

7                THE MARSHAL:  John Freiler, F-R-E-I-L-E-R.

8                THE DEPUTY CLERK:  Thank you.

9                THE COURT:  Thank you, sir.

10               MR. OKULA:  Your Honor, may we be heard just briefly

11   at sidebar?

12               THE COURT:  On the record?

13               MR. OKULA:  Yes, your Honor.

14               (Discussion at the sidebar)

15               MR. OKULA:  I believe Mr. Murphy was writing out the

16   additional instruction, with respect to the tax deficiency

17   element, that two or three thousand dollars may be

18   insufficient.  I think he's just locating that.

19               (In open court; jury present)

20               THE COURT:  Just be patient.  There is one more point.

21               You're instructed that, as to the requirement in

22   connection with the tax evasion counts that the tax deficiency

23   be "substantial," substantiality of the deficiency is for you

24   to decide based on all the evidence and circumstances in the

25   case relating to the particular count.  A few thousand dollars

74ijoset          C H A R G E

1    of evaded tax may, in a given case, be considered substantial,

2    depending on all those circumstances, but it's for you to

3    decide whether an amount involved in a particular count for a

4    particular year is or is not substantial within the context of

5    this statute.

6              Anything further?  Can I now start?

7              MR. OKULA:  They may start, your Honor.

8              THE COURT:  May they start?

9              MR. SCHARF:  They may, your Honor.

10             THE COURT:  Thank you both.

11             Okay.  Please enjoy your lunch.

12             (Deliberations commenced at 12:25 p.m.)

13             (In open court; jury not present)

14             THE COURT:  Everybody please give attention for a

15   moment because I want to talk to Mr. Vasquez.  Please take your

16   seats and pay attention.

17             Sir, I want to thank you for your service as an

18   alternate juror.

19             I want you to know that, once the jury deliberations

20   begin, the number is reduced to 12.  Do you understand?

21             THE ALTERNATE JUROR:  I understand, sir.

22             THE COURT:  And you perform a very important function

23   by being here in case anyone should get sick or anyone should

24   fail to complete their service as jurors.

25             It's a possibility that there might come a time when

74ijoset

1    one of the remaining jurors wouldn't be able to finish, and if

2    that happens, I'm going to ask you to make yourself available

3    to go in and undertake the deliberations with the jury and ask

4    the jury to start their discussions all over again if that

5    happens.  I have no reason to think it will happen.

6         I'm going to ask you, therefore, not to express any

7    opinions as to how it ought to be decided between now and the

8    end of the case.  And don't discuss the case with anybody.  And

9    don't speak to any of the participants.

10        As I understand, we have your phone number.  And if we

11   need you to come back and take a hand in the deliberations,

12   we're going to give you a call.

13        THE ALTERNATE JUROR:  Yes, sir.

14        THE COURT:  We don't know when that would be.

15        Please don't talk to any of the other jurors or

16   telephone them or have anything to do with them until you know

17   for sure the case is over.  And that might not even be this

18   week.  So would you be willing to do that for us?

19        THE ALTERNATE JUROR:  I will, your Honor.

20        THE COURT:  All right.

21        Anything else that any of you want me to take up with

22   Mr. Vasquez before he's excused?

23        MR. OKULA:  No, your Honor.

24        MR. SCHARF:  None on behalf of the defense, your

25   Honor.  Thank you.

74ijoset

1          MR. OKULA:  No, thank you.

2          THE COURT:  Thanks again.

3          I believe the clerk has your lunch.  And we're going

4    to want you to enjoy it in a separate location because they're

5    supposed to be deliberating.

6          THE ALTERNATE JUROR:  Okay.

7          THE COURT:  Thank you very much.  The clerk will take

8    you to a place where you can have lunch, and then we'll call

9    you if we need you.

10         THE ALTERNATE JUROR:  Okay.

11         THE COURT:  You can take it with you if you want.

12         THE ALTERNATE JUROR:  Whatever you like.  That's fine.

13         THE COURT:  Thanks so much.

14         (The alternate juror left the courtroom)

15         THE COURT:  As far as I'm concerned, you can all go to

16    lunch.  I will be having a meeting with the judges outside the

17    building commencing at 1:00 for probably 45 minutes, but I

18    would like you to be around in case a note does come from the

19    jurors.

20         You've already seen on the record what the exhibits

21    are that she's taking in, have you?

22         MR. SCHARF:  Yes, your Honor.

23         MR. OKULA:  Yes, your Honor.

24         THE COURT:  Okay.  Thank you.

25         (Recess pending verdict)

74ijoset

1              (In open court; jury not present)

2              THE COURT:  We're just going to break for the day.

3    Are you prepared to do that, or do you want to wait for

4    Mr. Sullivan?

5              MR. SCHARF:  He will be in in a moment, your Honor.

6    If we can wait, I would appreciate it.

7              THE COURT:  The question they wanted to ask was what

8    they were to do with the exhibits, and she told them they will

9    be locked in the jury room.  She's given them sealed envelopes

10   to put their own scratch books in and seal them up.

11             THE DEPUTY CLERK:  Did you want to tell them what the

12   questions were?

13             What they should do with all those exhibits.  They

14   were going to keep them in the carts and put them on the side.

15   I don't think the cleaning man, Mr. Bernard, who is the

16   cleaning man all the time, will go into the exhibits.  The

17   notes I had them put in sealed envelopes.  And the food goes to

18   security.  That was their questions.

19             They'll be back tomorrow morning.

20             MR. SCHARF:  Are we deliberating Friday?  Are they

21   deliberating Friday?

22             THE DEPUTY CLERK:  Well, we won't know that until

23   tomorrow.

24             THE COURT:  Bring in the jury, please.

25             (In open court; jury present)

74ijoset

1          THE COURT:  Members of the jury, we have Court Exhibit

2     8, which is your note.  It says, "We are ready to adjourn.  We

3     would like to start at 9 a.m. on Thursday, 4-19-07."

4          That's fine.  And as soon as I finish speaking, you

5     can recess for the day.  And you come in at 9:00 tomorrow.  And

6     do not start deliberating until everybody is present.

7          In the meantime, between now and then, don't discuss

8     the case with anyone who is not on the jury, and don't read

9     anything about it in the media or television, radio, anything

10    like that.  Don't speak to any of the parties or be present

11    when anybody is discussing the case.

12         The note also said, "Alice, please come in.  We have

13    questions."  Unless the questions are entirely trivial, like

14    what time will the coffee come, if it's any serious,

15    substantive question, you ought to put it in writing for the

16    Court.

17         I understand from the deputy that she has given you,

18    at your request, envelopes to seal up your personal scratch

19    notes and has made arrangements to lock the exhibits in the

20    jury room.

21         If there's any other open question, I would like you

22    to please tell me.

23         THE FOREPERSON:  No, there aren't, your Honor.

24         THE COURT:  Nothing else?  All right.

25         Well, thank you very much.  And you're excused until

74ijoset

1  9:00 tomorrow morning.  Please come on time.  You don't need to

2  wait on anybody else once you're all there.  Thank you very

3  much.

4              MR. SCHARF:  Your Honor, before the jury leaves, your

5  Honor, may I approach the sidebar to ask a question about

6  scheduling on Friday?

7              THE COURT:  You want the court reporter?

8              MR. SCHARF:  Well, no.  It's not substantive.  It's

9  just about scheduling.

10              THE COURT:  Please stand by.  Please be seated.

11              (Discussion at the sidebar, off the record)

12              (In open court; jury present)

13              THE COURT:  Thanks.  You can go for the night.  We'll

14  see you tomorrow.

15              (At 4:55 p.m., the jury left the courtroom)

16              (Adjourned to Thursday, April 19, 2007, at 9:00 a.m.)

17

18

19

20

21

22

23

24

25