IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

FREDERICK G. KRIEMELMEYER,

Defendant.

Case No.: 3:19-cr-00090-wmc

GOVERNMENT'S SENTENCING MEMORANDUM

**I.     Introduction**

This is a simple case.  The defendant was indicted for tax evasion and convicted by a jury of his peers.  This is his third criminal tax conviction.  He has demonstrated no effort to pay his past taxes owed, nor willingness to comply with the law in the future.  The Sentencing Guidelines properly account for the defendant's crimes and criminal history, resulting in an guidelines range of 63-78 months in prison.   The government recommends a sentence of 72 months in prison.

**II.    Procedural Background**

On June 26, 2019, a grand jury indicted the defendant on four counts of tax evasion.  Docket #1.  As subsequently described by Judge Crocker, "[a]t his July 23, 2019 arraignment, hewing to his philosophical/political antipathy toward the government in general and this court in particular, Kriemelmeyer refused to cooperate in any fashion with the proceedings."  Docket #22.  The defendant was nonetheless

released on conditions, but later filed a copy of the conditions on which he had written "Refusal for cause of fraudulent RELEASE ORDER…." Docket #24.  After a revocation hearing in which Judge Crocker agreed to waive certain conditions of release, the defendant remained released on conditions.  Docket #34.  The defendant proceeded to file numerous frivolous documents.  *See* Docket ## 4, 9-13, 19-21, 23, 28, 31, 37-39, 46, 67.  He submitted such filings despite being represented by counsel, and despite repeated court orders rejecting the filings as frivolous.  *See* Docket ## 32, 38, 42, 61.

On February 25, 2020, after a two-day trial, a jury convicted the defendant on all four counts of tax evasion.  Docket #75.  Since conviction, the defendant has continued to submit dozens more frivolous filings, which the Court noted were consistent with his "sovereign citizen" theory of defense.  Docket #84.  The Probation Office submitted a Presentence Investigation Report (PSR) on April 1, 2020, which calculated a total tax loss of $718,044, a criminal history category V, and a sentencing guidelines range as 63-78 months.  Docket #77.  The defense's only objection to the PSR was to claim that the defendant deserved credit for acceptance of responsibility, which was rejected by the PSR author.  Docket ##81-82.

**III.  Factual Background**[1]

    **A.  The Defendant Has Refused to Follow State and Federal Tax Laws for More Than Thirty Years, Despite Multiple Criminal Convictions and Prison Terms**

        **1.  The Defendant Was Convicted at Trial and Served Time in Prison in the 1990's for Refusing to File and Pay Wisconsin State Taxes, and Has Accrued Over $500,000 in Unpaid Wisconsin State Taxes**

---

[1] As argued below, this section goes directly to the defendant's history and characteristics, a factor the Court considers under 18 U.S.C. § 3553(a).

In approximately 1988, the defendant began claiming he "was not in fact a taxpayer" and would not pay taxes. Ex. 1 at 165:22 (1994 Trial Tr. Excerpts). In 1991, the State of Minnesota notified the defendant that his state income tax return for tax year 1988 was frivolous. Ex. 2 (1991 Minnesota Tax Court Decision Letter). In 1993, the State of Wisconsin brought a criminal proceeding against the defendant alleging he willfully failed to file his state tax returns for 1988-1992. Ex. 3 (1994 Wisconsin Prosecution Documents). For the years 1990-1992, the defendant's dental practice had at least $250,000 in combined gross receipts, but he refused to file a tax return. During the bench trial, the defendant argued that the government had failed to prove "willfulness," claiming that there was "no testimony … to show my state of mind … that I understood myself to be liable [for] the tax." Ex. 1 at 68:3-6. The judge nonetheless found the defendant guilty, concluding that the defendant did not act in good faith, and that his actions may have been "fraudulent" when he "closed checking accounts, [and] transferred property to trust[s]". Ex. 1 at 273:5-11. Records indicate that the defendant served nearly two years in prison stemming from the offense, after an original probation order was vacated and he was subsequently charged with criminal escape for absconding from prison while on furlough. PSR ¶¶ 38-39.

The defendant thereafter continued to flout his state tax obligations. He scribbled "refusal for [] cause" on a 2004 Wisconsin State tax notice advising him that he owed unpaid taxes for 2000-2002. Ex. 4 (2004 WI State Tax Letter). As of 2017, he owed the State over $558,730 in unpaid taxes. Ex. 5 (WI Summary of Tax Owed).

### 2. Despite His 1994 State Tax Conviction and Prison Time, the Defendant Continued Filing False Federal Tax Returns, Resulting in a Conviction and a Three-Year Prison Sentence in 2007

At the same time the defendant began defying his state tax obligations, he also began defying his federal tax obligations. He filed a frivolous federal individual income tax return for 1988 that included asterisks instead of income and deductions. Ex. 6 (1988 Tax Return). The IRS thereafter sent a letter to the defendant notifying him that his objections to the tax laws had no legal basis, and warning him that "[P]ersons who do not file timely and correct returns or who do not pay assessed tax or penalties, can subject themselves to civil and criminal penalties…." Ex. 7 (1998 IRS Letter).

In March 2007, the defendant was indicted for filing false federal income tax returns for 2000 and 2002-2004. During those years, he recorded and reported only approximately 20% of gross receipts received by his dental business. The defendant did not accept credit cards or checks made out in his name, and had his mother cash checks for him because he did not have a bank account. Additionally, many patients paid in silver. 07-CR-52, Docket #127, ¶ 9-14 (2007 PSR). The defendant was convicted by a jury, and ordered by the court to serve three years in prison and pay restitution of $135,337.

During the course of the proceeding, the defendant filed a civil lawsuit against the IRS, the investigating IRS Special Agent, and Magistrate Judge Crocker. The defendant also sent letters to his patients telling them they were under no obligation to respond to IRS questionnaires, and advising them that they had the right to question

4

the IRS agent's authority.  He told his patients to ask questions rather than provide answers.  07-CR-52, Docket #127, ¶ 20 (2007 PSR)

### 3. After Completing His Second Criminal Tax Prison Sentence, the Defendant Promptly Began a Third Tax Evasion Scheme

In June 2011, when his supervised release expired, the defendant reopened his dental practice and reverted to a familiar pattern of tax evasion.  As detailed at trial, this included evading both his outstanding tax obligations (as determined in the prior trial and by IRS audit), as well as the assessment of taxes on the income from his reopened dental practice.   Similar to his prior scheme, he ran his finances in a way to avoid creating a paper trail or records that would potentially result in the IRS receiving notice of his income or assets.  He did not file income tax returns.  He had his patients pay in cash, checks with the payee line left blank, and silver.  He rejected direct payments from insurance companies, with statements such as: "I do not have a tax ID #.  I do not use a social security #.  I do not accept assignment of benefits, and therefore you do not need to produce a[n IRS Form] 1099 for me."  Ex. 8 (Insurer Letters).  He did not have a bank account. He paid his expenses in a way to conceal his assets and income from the IRS.  This included paying office rent using money orders and paying his employee and his home rent with checks received from patients with the payee line left blank.

The defendant's efforts to conceal assets and income from IRS collection worked.  The IRS was unable to locate any assets or income to lien or levy.  His efforts to conceal his income from IRS assessments also worked.  There are no IRS records showing he earned income, such as Forms 1099 from insurance companies.  IRS Criminal

Investigations nonetheless caught on to his scheme and executed a search warrant on his dental business in July 2015. Documents obtained in that search ultimately led to the present conviction.

> **B.  The Defendant's Persistent Refusal to Follow the Law Extends Beyond Tax Matters, and Includes Harassing State and Local Officials with Fraudulent Liens and Arbitration Awards**

The defendant's belief that he is not subject to the law is not limited to taxes. In January 2017, he was pulled over driving a car with a suspended registration and to which he had attached a fake license plate reading "Exempt Private." Ex. 9 (Police Report and Photo). He was arrested on an outstanding warrant. In response to this arrest, the defendant filed fraudulent liens against the police and judge involved with the case. This in turn resulted in the defendant being criminally charged with filing fraudulent liens. In December 2018, he pleaded guilty to a felony for filing fraudulent financing statements with the intent that it be used to harass or defraud. Ex. 10 (Minn. v. Kriemelmeyer Docket).

In February 2019, the City of La Crosse impounded the defendant's car, apparently as a result of nearly $2,000 in parking tickets he refused to pay. Ex. 11 (Immobilization Notice); Ex. 12 at 3 (Motion for Reconsideration). In response, the defendant "retaliate[d] against public officials [by] mailing … bogus Arbitration Awards." Ex. 13 at 3 (Brief in Support of Motion to Vacate Arbitration Awards). The city and its employees had to file and litigate a civil action in state court in order to vacate these arbitration awards. Ex. 14 (Order Granting Plaintiff's Motion to Vacate).

Finally, the defendant has refused to abide by the dentist licensing requirements of the State of Wisconsin. In January 2014, after the defendant's dental license expired and he refused to renew it, the State of Wisconsin revoked his right to a license following a disciplinary proceeding. Ex. 15 (Revocation Order). The defendant nonetheless continued to operate his dental business in violation of the order. As a result, in November 2014, the State of Wisconsin issued an injunction ordering and prohibiting the defendant from practicing dentistry. The order warned him that violating the injunction could subject him to criminal charges. Ex. 16 at 7 (Injunction Order). The defendant nonetheless continued his dental business in violation of the injunction and to this day maintains a website soliciting patients.[2]

### IV. Sentencing Argument

#### A. 72-Months' Imprisonment Is Consistent with the Middle of the Sentencing Guidelines Range

The PSR correctly calculated the advisory guidelines range as 63-78 months, based on a relevant conduct tax loss of $718,044 and a criminal history category V. A 72-month sentence is an appropriate sentence in this range and is supported by the Section 3553(a) factors discussed below.

The defense's only objection to the PSR calculation is that the defendant did not receive credit for acceptance of responsibility. The request for credit for acceptance of responsibility here makes a mockery of the concept. First, the defendant went to trial and put the government to its burden of proof by contesting the essential factual

---

[2] *See* https://frederickkriemelmeyer.com/.

7

elements of his guilt. The Sentencing Guidelines specifically provide that the adjustment for acceptance of responsibility, "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." U.S.S.G. § 3E1.1. Second, the defendant in no way demonstrates that he recognizes the wrongfulness of his actions or that he now intends to comply with the law. He has not made any tax payments or filed tax returns. Third, despite being represented by counsel, the defendant continues to file dozens of frivolous documents, which the Court just last week described as "consistent with Kriemelmeyer's many previous, frivolous filings touting 'sovereign citizen' theories of defense, which the court has already expressly rejected." Docket #84. None of this is in any way consistent with acceptance of responsibility.

### B. The Section 3553(a) Factors Favor at Least 72 Months' Imprisonment

In addition to fitting squarely within the Sentencing Guidelines range, a 72-month sentence is sufficient—but not greater than necessary—in accordance with the factors set forth in 18 U.S.C. § 3553(a). In particular, a 72-month sentence is warranted based on the nature and circumstances of the offense and the characteristics and history of the defendant, along with the need for the sentence to reflect the seriousness of the offense, and provide just punishment and deterrence.

#### 1. The Nature and Circumstances of the Offense Demonstrate that the Defendant Is a Career Tax Cheat

Over the course of the past three decades, the defendant has organized his entire financial life around tax fraud schemes, including the present one. He has refused to

maintain bank accounts. He has insisted his patients pay in cash, checks with the payee left blank, or silver. He refused to accept insurance. He insisted on paying his bills with cash or in checks received from patients. This pattern extends back to his 1994 Wisconsin State tax prosecution, during which the defendant apparently closed his bank accounts and transferred property to trusts. The defendant's tax fraud is not a momentary lapse in judgment, or a single instance of regrettable misconduct. It is a life-long practice. The defendant's behavior as a committed, career, tax cheat merits a six-year prison sentence.

### 2. The Defendant's Characteristics and History Extend Beyond Defying His Tax Obligations and to Harassing Public Officials

The defendant's multi-decade history of defying the law is not limited to tax fraud, but extends to defying government law and processes at every turn. He has harassed state and local officials with fraudulent liens and arbitration awards for simply doing their jobs. He has made frivolous arguments in refusing to abide by the dental licensing requirements of the state of Wisconsin, at the risk of criminal liability. In the present case, the defendant has ignored or defied orders of the Court and filed dozens of frivolous and fraudulent documents, and "refused to cooperate in any fashion with" in-court proceedings. *See, e.g.*, Docket #22. The defendant's abuse of the legal system and attitude toward the law are behavior that favors a 72-month sentence.

### 3. A 72-Month Sentence Is Necessary to Provide Just Punishment and Deterrence

The defendant has shown through his recidivism that prison sentences of two or three years are wholly insufficient to deter his future tax crimes. He apparently served

nearly two years in prison as a result of his state tax conviction in 1994, yet continued to file frivolous federal tax returns after release.  He was sentenced to three years in prison as a result of his federal tax conviction in 2007, but immediately began another tax evasion scheme upon completion of his sentence.  The defendant has shown through his own conduct that a longer sentence is necessary to provide any specific deterrence value.

### 4. A 72-Month Sentence Would Deter Other Would-Be "Sovereign Citizens"

The defendant is not the only one who will take notice of the sentence in this case.  The Court previously noted that the defendant's frivolous filings are consistent with "sovereign citizen" arguments.  *See* Docket #84.  Such sovereign citizen rhetoric is not invented out of thin air, but rather is shared among sovereign citizens and others intent on defying the law.[3]  A six-year prison sentence would provide appropriate deterrence within the sovereign citizen community and for others tempted to follow the defendant's path.

### C. Restitution Consistent with the Counts of Conviction Is Appropriate

Finally, restitution for the tax loss in the counts of conviction is proper.  The Government requests that the Court include as a condition of supervised release the following restitution schedule:

---

[3] "Gibberish" legal arguments almost identical to those made by the defendant in this case are not limited to tax defiers.  *See, e.g.*, https://www.ocregister.com/2011/04/14/activist-nativo-lopez-threatened-with-jail-for-gibberish/.

| Tax Year | Tax Restitution to IRS |
|---|---|
| 2000 | $18,477 |
| 2001 | $24,022 |
| 2002 | $28,700 |
| 2003 | $40,616 |
| 2004 | $47,544 |
| 2013 | $30,229 |
| 2014 | $25,123 |
| 2015 | $12,128 |
| **TOTAL** | **$226,839** |

**V.   Conclusion**

For the forgoing reasons, the United States recommends that the defendant be sentenced to 72 months' imprisonment and restitution of $226,839.

Dated:  May 15, 2020

                          Respectfully submitted,

                          SCOTT C. BLADER
                          United States Attorney

By:   /s/
                          ELIZABETH ALTMAN
                          Assistant United States Attorney
                          ERIC C. SCHMALE
                          Trial Attorney, Tax Division